STATE OF NORTH CAROLINA v. DWIGHT LAMAR PAIGE, Defendant

No. COA09-563

(Filed 16 February 2010)

**1. Evidence— motion to suppress—drugs—timeliness—notice**

The Court of Appeals analyzed defendant's in-court objections as a motion to suppress in a drugs case and concluded that the trial court did not err by denying the motion on the grounds that it was not timely. The State provided defendant with sufficient notice, approximately seven weeks, which was more than the required 20 workings days under N.C.G.S. § 15A-975(b).

**2. Constitutional Law— effective assistance of counsel—failure to file timely written motion to suppress**

Defendant did not receive ineffective assistance of counsel in a drugs case based on his trial attorney's failure to file a timely written motion to suppress. It would have made no difference in the outcome of the case since the trial court resolved the factual and legal issue raised by defendant's objections.

On writ of certiorari to review judgment entered on or about 27 April 2007 by Judge Jack A. Thompson in Superior Court, Columbus County. Heard in the Court of Appeals 15 October 2009.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Lars F. Nance, for the State.*

*Duncan B. McCormick, for defendant-appellant.*

STROUD, Judge.

Defendant was convicted by a jury of trafficking in cocaine by transportation, trafficking in cocaine by possession, possession with intent to sell and deliver more than 1 ½ oz of marijuana, and carrying a concealed handgun. Defendant filed a "Petition for Writ of Certiorari" as to his two trafficking charges; this Court allowed the petition. Defendant argues the trial court erred in denying his motion to suppress and thereby admitting "the evidence seized from his car" and "his pretrial statements." (Original in all caps.) Defendant also claims ineffective assistance of counsel as his trial attorney did not file a written motion to suppress. For the following reasons, we find no error.

**STATE v. PAIGE**

[202 N.C. App. 516 (2010)]

## I. Background

The State's evidence tended to show that on 15 March 2006, Ms. Bonnie Gore and her brother, defendant, needed to get his white Caprice aligned. Defendant came to Ms. Gore's house, and they switched cars. Ms. Gore drove defendant's white Caprice, and defendant drove a black car that was at Ms. Gore's house. Ms. Gore and defendant came upon a license check point, and defendant motioned for Ms. Gore to turn around because at the time she was 15 and did not have a license. Ms. Gore began to turn around in a yard when Detective William Little of the Columbus County Sheriff's Office pulled in behind her. Detective Little asked Ms. Gore if he could search the white Caprice she was driving. Ms. Gore testified that she told Detective Little to ask defendant as it was his car, but Detective Little testified Ms. Gore told him he could search the white Caprice.

Detective Little then searched the trunk and found "a large quantity of marijuana[.]" Detective Little also found "a set of digital scales, approximately ten more baggies of marijuana, and a large amount of powder cocaine, about two ounces of it." Detective Little had Deputy Brian Smith of the Columbus County Sheriff's Office detain defendant. Defendant repeatedly asked Deputy Smith if he could go to Ms. Gore. Deputy Smith asked if he could search the black car defendant was driving, and defendant consented and informed Deputy Smith there was a gun under the driver's seat. Deputy Smith found the gun. Meanwhile, after being read her Miranda rights, Ms. Gore wrote a statement which read, "My brother came to my home to get me so I could follow him to get one of his cars aligned up. And then that stuff in trunk, I didn't know nothing about it."

Deputy Smith took defendant to Detective Little. Defendant was read his Miranda rights, and he informed Detective Little that the items in the trunk were his and not Ms. Gore's items. Defendant further informed Detective Little of how he had purchased the drugs and apologized to Ms. Gore. Defendant was eventually taken to the Law Enforcement Center where he was read his Miranda rights again. Defendant also provided and signed the following statement:

> The following is a statement prepared by Detective William Heath Little of the Columbus County Sheriff's Office detailing an interview conducted with Dwight Lamar Paige at the Columbus County Law Enforcement Center. On Monday week I purchased one pound of marijuana and two ounces of cocaine from a friend of mine named Tyron (sic) from South Carolina and another male

Tyron (sic) referred to as Black. I met the two individuals at the car wash in Tabor City. I gave Tyrone (sic) Thirty Five Hundred Dollars and he gave me the pound of marijuana and two ounces of cocaine. The deal took place in a blue Acura that the male called Black was driving. The narcotics have been inside my white Caprice from the purchase from these two individuals. One [sic] 3/15/06, I went to my mother's residence and asked my sister, Bonnie, if she would drive the Caprice to the shop to get it repaired. The black Cutlass I was driving today was already parked at my mom's house—my mother's house. We were traveling on Peacock Road when I saw the officers standing in the road and motioned for them—out the window for her to turn around. I then proceeded on to where the officers were standing. My sister, Bonnie, had no knowledge of what was inside the trunk. The marijuana and cocaine found in the trunk was mine. Dwight Paige, 3/15/06.

On or about 15 May 2006, defendant was indicted for trafficking in cocaine by transportation, trafficking in cocaine by manufacturing, trafficking in cocaine by possession, possession with intent to sell and deliver marijuana, and carrying a concealed gun. Defendant was convicted by a jury of trafficking in cocaine by transportation, trafficking in cocaine by possession, possession with intent to sell and deliver more than 1 ½ oz of marijuana, and carrying a concealed handgun. For the two trafficking in cocaine convictions, defendant was sentenced to 35 to 42 months imprisonment. For the possession of marijuana and carrying a concealed handgun convictions, defendant received a suspended sentence requiring 24 months of supervised probation. Defendant filed a "Petition for Writ of Certiorari" as to his two trafficking charges; this Court allowed the petition. Defendant argues the trial court erred in denying his motion to suppress and thereby admitting "the evidence seized from his car" and "his pretrial statements." (Original in all caps.) Defendant also claims ineffective assistance of counsel as his trial attorney did not file a written motion to suppress. For the following reasons, we find no error.

## II. Defendant's Objections

[1] At trial, defendant's attorney objected to the admission of (1) the evidence found inside the trunk, including Ms. Gore's and Detective Little's testimony regarding that evidence, and (2) defendant's oral and written pre-trial statements, including Deputy Smith's and Detective Little's testimony regarding those statements. During Ms.

Gore's testimony, she was asked, "When [Detective Little] opened the trunk, did you see what was inside?" Bonnie responded, "No[,]" but was cut off from finishing her statement when defendant's attorney objected. The trial court had the jury leave the room and asked defendant's attorney his grounds for the objection. Mr. Dorman, defendant's attorney, responded,

> Judge, I have reason to—you've got to have permission or reason to do the search. She said he asked for permission and she said permission is not mine to give. And then asked her what she saw when he opened the trunk. Judge, they can't open the trunk unless he has permission or a warrant, it's unconstitutional[.]

Detective Little and Ms. Gore were then both extensively questioned on *voir dire*. The State's attorney, Ms. Freedman, then argued that defendant was improperly bringing a motion to suppress during the trial. Mr. Dorman then explained why he had not filed a motion to suppress prior to the trial:

> If I could see the court file. Judge, I just wanted to make sure—this case went through the case management system. In looking back through my notes the first time that I saw it was scheduled for trial was March 16th. Just wanted to see if there was a scheduling order for that, your Honor.
>
> Your Honor, this matter was scheduled for trial on January 16th. That day came and went. The defendant was here, ready for trial and then it went to February. That date came and went and we were ready for trial.
>
> Then eight days before the March trial date, the State serves me with notice and these statements. The first time I got them and it was on March 6th. The trial date in March was March 19th. North Carolina 15A-97-22, anyway concerning the statement says that if you are served less than 20 working days before trial, you do it at trial. Judge, I was served—assuming they're not going back to January, assuming that you—if you get served it is just going toward the next trial. I got served on March 6th, which was eight working days before and less than 20, so I'm at trial. Got served on March 6th, I'm at trial on March 19th. He was on the trial calendar, we were ready to go—
>
> COURT: But you're not at trial.
>
> MR. DORMAN: Sir?
>
> COURT: You were not at trial, it was not tried.

STATE v. PAIGE

[202 N.C. App. 516 (2010)]

MR. DORMAN: It was not tried. So I've got ten days to file a motion and the ten days run out before the trial week is over. Again, if you want to say that when you get served it's talking about the next court date, Judge, I say it's talking about the original court date. And I was never served with any of this until two months after the first court date. I get served less than 20 days before trial, so I can make it at trial on March 19th if you say it starts running then but the ten days runs out during the middle of trial week. So, Judge, my main contention is that this is about original trial dates. Never got any information before the original trial date, never requested any information before the original trial date.

COURT: Is it not true that you have yet to file a motion to suppress?

MR. DORMAN: Yes, sir.

COURT: And you have known about this how long?

MR. DORMAN: Know about the case?

COURT: Known about the evidence.

MR. DORMAN: Well known about the evidence days after the start, your Honor, was served on March—was served almost a year later with the evidence.

The trial court then concluded,

I'm prepared to rule at this time. The Court finds that the defendant was properly noticed at least 20 working days before trial of the intention to use the evidence in question. That no motion to suppress was filed or has been filed—has yet to be filed. That the motion is—to suppress or the objection to the evidence is untimely.

In addition to that, the Court finds based upon the proffered evidence that there was consent to search in this case and I will enter proper findings of facts and conclusions of law when I have the opportunity to do so. Let's bring the jury back.

Thus, the trial court allowed Ms. Gore to testify as to what she saw in the trunk. Later, during Detective Little's testimony, defendant again repeatedly objected and was overruled regarding testimony and exhibits involving the evidence found in the car.

Defendant also objected to the admission of his pre-trial statements or testimony regarding his statements by Deputy Smith and Detective Little. During Detective Little's testimony, defendant expressed his objections outside of the presence of the jury. Defendant's attorney made essentially the same argument as he had made regarding the evidence found in the trunk, and the trial court concluded, "Let the record show that this trial was begun during the April 23, 2007 session of Superior Court for Columbus County. Jury selection began on the 25th of April, 2007. Today is the 26th day of April, 2007. There has yet to be any motion to suppress filed of record. Objection to the statement is overruled."

Thus, defendant's objections regarding the evidence found in the car and defendant's statements were overruled, presumably on the grounds that the trial court had already deemed the "motion to suppress" such evidence as untimely. Furthermore, both defendant and the State's briefs' arguments are based upon law regarding motions to suppress. Therefore, though no formal motion to suppress was filed nor during trial did defendant initially characterize his objections as a motion to suppress, we will analyze defendant's in-court objections as a motion to suppress.

### III. Motion to Suppress

"It is well established that the standard of review in evaluating a trial court's ruling on a motion to suppress is that the trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting. The trial court's conclusions of law, however, are fully reviewable." *State v. Green*, —— N.C. App. ——, ——, 670 S.E.2d 635, 637 (citation omitted), *affirmed per curiam*, 363 N.C. 620, 683 S.E.2d 208 (2009). N.C. Gen. Stat. § 15A-975 provides:

> (a) In superior court, the defendant may move to suppress evidence only prior to trial unless the defendant did not have reasonable opportunity to make the motion before trial or unless a motion to suppress is allowed during trial under subsection (b) or (c).

> (b) A motion to suppress may be made for the first time during trial when the State has failed to notify the defendant's counsel or, if he has none, the defendant, sooner than 20 working days before trial, of its intention to use the evidence, and the evidence is:

(1) Evidence of a statement made by a defendant;

(2) Evidence obtained by virtue of a search without a search warrant; or

(3) Evidence obtained as a result of search with a search warrant when the defendant was not present at the time of the execution of the search warrant.

(c) If, after a pretrial determination and denial of the motion, the judge is satisfied, upon a showing by the defendant, that additional pertinent facts have been discovered by the defendant which he could not have discovered with reasonable diligence before the determination of the motion, he may permit the defendant to renew the motion before the trial or, if not possible because of the time of discovery of alleged new facts, during trial.

When a misdemeanor is appealed by the defendant for trial de novo in superior court, the State need not give the notice required by this section.

N.C. Gen. Stat. § 15A-975 (2005). Thus,

[a] defendant may move to suppress evidence once trial proceedings have commenced (1) if he did not have a reasonable opportunity to make the motion before trial, or (2) if the State has not given the defendant sufficient advance notice of its intention to use the evidence, or (3) when additional facts are discovered after a pre-trial motion has been denied that could not have been discovered with reasonable diligence before.

*State v. Austin*, 111 N.C. App. 590, 598, 432 S.E.2d 881, 886 (1993) (citation and quotation marks omitted).

Defendant's trial began on 25 April 2007. Defendant was notified of the State's intent to use the evidence on 6 March 2007. Thus, the State provided defendant with sufficient notice as defendant had approximately seven weeks of notice, certainly more than the required "20 working days[.]" *See* N.C. Gen. Stat. § 15A-975(b). Furthermore, defendant has not explained why he delayed in filing a motion to suppress or indicated that additional facts were discovered. Therefore, we conclude that the trial court did not err in denying defendant's motion to suppress on the grounds that it was not timely. *See State v. Jones*, 157 N.C. App. 110, 114, 577 S.E.2d 676, 679 (2003) ("[D]efendant's objection at trial to the admissibility of the evi-

dence is without merit because the objection, treated as a motion to suppress, was not timely made. We therefore overrule this assignment of error." (citation omitted)). This argument is overruled.

## IV. Ineffective Assistance of Counsel

[2] Lastly, defendant contends that he received ineffective assistance of counsel due to his trial attorney's failure to file a timely written motion to suppress.

> To obtain relief for ineffective assistance of counsel, the defendant must demonstrate initially that his counsel's conduct fell below an objective standard of reasonableness. The defendant's burden of proof requires the following:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*State v. Quick*, 152 N.C. App. 220, 222, 566 S.E.2d 735, 737, (citations and quotation marks omitted), *disc. review denied and appeal dismissed*, 356 N.C. 311, 570 S.E.2d 896 (2002).

Here, after determining that defendant's motion to suppress was untimely, the trial court also stated, "In addition to that, the Court finds based upon the proffered evidence that there was consent to search in this case and I will enter proper findings of facts and conclusions of law when I have the opportunity to do so. Let's bring the jury back." During sentencing, the trial court again noted that defendant's motion to suppress was untimely and stated "[t]hat in view of the foregoing the Court sees no necessity to enter a formal order concerning the brief voir dire relative to the search of the defendant's automobile nor the admission of the defendant's statements, both written and oral."

The State argued before the trial court and on appeal that defendant had no standing to contest Ms. Gore's consent to search the car; however, even if we assume *arguendo* that defendant did have standing to bring a motion to suppress Ms. Gore's consent, it is apparent that the trial court found Detective Little's testimony regarding consent to be more credible than that of Ms. Gore. In addition, despite defense counsel's failure to file a timely motion to suppress, the trial court considered defendant's objections and gave him a full opportunity to conduct *voir dire* and to make his arguments that evidence from the search should be suppressed. Although the trial court should have entered more findings of fact and conclusions of law, we are able to determine from the trial court's statement "that there was consent to search in this case" that the trial court resolved the factual and legal issue raised by defendant's objections. As the trial court found that there was consent for the search, a timely written motion to suppress would have made no difference in the outcome of the case. Accordingly, this argument is overruled.

### V. Conclusion

For the foregoing reasons, we conclude that the trial court did not err in denying defendant's motion to suppress and defendant did not demonstrate a reasonable probability that the outcome of the case would have been different had a timely written motion to suppress been filed.

NO ERROR.

Judges STEPHENS and BEASLEY concur.