STATE OF NORTH CAROLINA v. ANTONIO DSHAWN STOWES

No. COA11-831

(Filed 1 May 2012)

**1. Evidence—motion to suppress—not timely—denial not erroneous**

Defendant's motion to suppress evidence in a possession of a firearm by a felon, robbery with a dangerous weapon, and carrying a concealed weapon case was not timely and the trial court did not err in denying it.

**2. Appeal and Error—preservation of issues—photographic lineup procedures—plain error review**

Defendant in a possession of a firearm by a felon, robbery with a dangerous weapon, and carrying a concealed weapon case waived any argument as to potential error in a photographic lineup procedure, except as to plain error, by failing to object during the examination of a witness concerning the photographic lineup and failing to object to that witness's in-court identification of defendant.

**3. Identification of Defendants—photographic lineup—procedure not impermissibly suggestive—no plain error**

The trial court did not commit plain error in a possession of a firearm by a felon, robbery with a dangerous weapon, and carrying a concealed weapon case by overruling defendant's objection to the State's admission of two exhibits relating to a photographic lineup. The investigating officer's presence in the room with the witness during the photographic lineup did not create an impermissibly suggestive lineup procedure.

**4. Identification of Defendants—photographic lineup—Eyewitness Identification Reform Act violation—motion to suppress untimely—exclusion of evidence not warranted**

The trial court did not err in a possession of a firearm by a felon, robbery with a dangerous weapon, and carrying a concealed weapon case by denying defendant's motion to suppress two exhibits relating to a photographic lineup based on a violation of the Eyewitness Identification Reform Act (EIRA). Defendant failed to make a timely motion to suppress the identification procedures and defendant cited no case law in support

of his argument that the EIRA violation warranted exclusion of the evidence.

**5. Identification of Defendants—in-court identification—not tainted by impermissibly suggestive photo lineup**

The trial court did not commit plain error in a possession of a firearm by a felon, robbery with a dangerous weapon, and carrying a concealed weapon case by allowing a witness to make an in-court identification of defendant. The identification was not tainted by an impermissibly suggestive photo lineup conducted prior to the trial.

Appeal by Defendant from judgment entered 27 January 2011 by Judge Paul C. Ridgeway in Superior Court, Durham County. Heard in the Court of Appeals 29 November 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Thomas O. Lawton III, for the State.*

*Guy J. Loranger for Defendant-Appellant.*

McGEE, Judge.

Antonio Dshawn Stowes (Defendant) was convicted on 27 January 2011 of possession of a firearm by a felon, robbery with a dangerous weapon, and carrying a concealed weapon. Defendant was sentenced to a consolidated sentence of 76 months to 101 months in prison. Defendant appeals.

The evidence at trial tended to show that on the evening of 29 May 2010, Gurkawal Vilkhu (Mr. Vilkhu) was working at Fashion Avenue, a clothing store in Durham (the store). Mr. Vilkhu was the store manager. At around seven or eight o'clock that evening, a man wearing sunglasses came into the store and tried on shoes. Mr. Vilkhu asked the man why he was wearing sunglasses at night and the man replied: "[I]t's my eyes[.]" The man remained in the store for forty-five to fifty minutes, and then approached the counter and asked to try on jewelry. After trying on jewelry, the man told Mr. Vilkhu he could not afford the jewelry. The man then returned to the back of the store.

A few minutes later, the man came back to the counter and, after asking Mr. Vilkhu the price of two pairs of shoes, drew a silver gun from his pocket. The man showed the gun to Mr. Vilkhu and told Mr. Vilkhu to give him the money from the cash register. Mr. Vilkhu told the man he could not open the register. The man then left the store

and carried with him two pairs of shoes. The man had not paid for the shoes.

Mr. Vilkhu called the police, but the responding officers were unable to apprehend a suspect. Several days after the robbery, Officer Anna Christaldi (Officer Christaldi) of the Durham Police Department obtained surveillance recordings from the store. Based on images in the recordings and conversations with other police officers, Officer Christaldi began to focus on Defendant as a suspect. Officer Christaldi obtained a photograph of Defendant and created a photo lineup using Defendant's photograph, along with five other photographs obtained from the police database that were "similar" to Defendant's photograph.

Officer Christaldi prepared paperwork for the photo lineup and asked Officer Edwina Lloyd (Officer Lloyd), who was not involved in the investigation, to administer the lineup to Mr. Vilkhu. Officer Lloyd complied and presented the lineup to Mr. Vilkhu on 4 June 2010, a few days after the robbery. Officer Lloyd testified that, when she administered the photo lineup, she did not know which photograph was the one of the suspect. Officer Lloyd read instructions to Mr. Vilkhu verbatim from a preprinted instruction sheet. Mr. Vilkhu identified the photograph of Defendant with "75 percent" certainty as the suspect who had robbed the store. Officer Christaldi was present throughout the photo lineup, along with Officer Lloyd and Officer Lloyd's training officer, because Officer Christaldi could not find a second, independent investigator and "had to think outside the box[.]" Officer Christaldi was standing within Mr. Vilkhu's view and was not "that far" from Officer Lloyd. Officer Christaldi testified that she made no comments and "was just standing there" while the photo lineup was displayed.

During trial, Mr. Vilkhu testified extensively regarding the robbery and the photo lineup. In the courtroom, Mr. Vilkhu identified Defendant as the man he had identified during the photo lineup, and also as the man who had robbed the store. Officer Lloyd testified regarding the photo lineup, during which time the State moved to admit State's Exhibits 4 and 5 (Exhibits 4 and 5), which consisted of the photographs used during the photo lineup and associated paperwork. Defendant objected and the trial court stated that it would treat Defendant's objection as both an objection and a motion to suppress. The trial court then denied Defendant's motion to suppress and overruled Defendant's objection.

STATE v. STOWES

[220 N.C. App. 330 (2012)]

## I. Issues on Appeal

Defendant raises the following issues on appeal: (1) whether the trial court erred in overruling Defendant's objection to admission of the State's pretrial identification evidence because the procedure was impermissibly suggestive; (2) whether the trial court erred in denying Defendant's motion to suppress the State's pretrial identification evidence because the State obtained the evidence in violation of the Eyewitness Identification Reform Act (EIRA); and (3) whether the trial court committed plain error in allowing Mr. Vilkhu to identify Defendant during the trial when Mr. Vilkhu's identification was "tainted by an impermissibly suggestive photo lineup that had been conducted prior to trial[.]"

## II. Preservation of issues.

We first address the preservation of Defendant's issues for appeal. As to Defendant's third argument regarding Mr. Vilkhu's in-court identification, we note that Defendant concedes he did not preserve this argument by objection and therefore he is limited to plain error review. In Defendant's other arguments, he challenges the trial court's ruling denying his motion to suppress Exhibits 4 and 5. Defendant also argues that the trial court erred in overruling his objection to the admission of Exhibits 4 and 5.

### A. Motion to Suppress

**[1]** A motion to suppress must be made prior to trial unless the evidence obtained falls within certain exceptions not relevant here. *See e.g.* N.C. Gen. Stat. § 15A-975 (2011). In the present case, Defendant objected at trial to the introduction of Exhibits 4 and 5 by the State and the trial court itself elected to treat Defendant's objection as a motion to suppress. The trial court then denied Defendant's motion to suppress and overruled Defendant's objection. We hold that Defendant's "motion to suppress" was not timely, and the trial court did not err in denying it. *See, e.g., State v. Paige,* 202 N.C. App. 516, 522, 689 S.E.2d 193, 197 (2010) (concluding "that the trial court did not err in denying defendant's motion to suppress on the grounds that it was not timely"); *see also State v. Jones,* 157 N.C. App. 110, 114, 577 S.E.2d 676, 679 (2003) ("[D]efendant's objection at trial to the admissibility of the evidence is without merit because the objection, treated as a motion to suppress, was not timely made."). This argument is overruled.

## B. Preservation by Objection

**[2]** Defendant also contends that his objection to the admission of Exhibits 4 and 5 preserved the issue for appeal. The State counters that Defendant's failure to object to Mr. Vilkhu's in-court identification of Defendant at trial amounted to a waiver of Defendant's objection to the results of the pretrial identification procedure and therefore to Exhibits 4 and 5 as well. The following exchange occurred during the State's examination of Mr. Vilkhu without objection by Defendant:

> [Mr. Vilkhu:] They just show the five—four or five pictures. Which is right person they come in your store, show you a gun and they take a shoe. I say, yes.
>
> [THE STATE:] Would you recognize your signature if you saw it again, your handwriting? Would you recognize that if you saw it again, sir?
>
> [Mr. Vilkhu:] Yes.
>
> [THE STATE:] If I may approach, Your Honor?
>
> THE COURT: Yes.
>
> . . . .
>
> [THE STATE:] I'm going to hand what's been marked State's Exhibit 3. Can you just take a look at that piece of paper, sir? Do you see your signature on that page?
>
> [Mr. Vilkhu:] Yes, sir.
>
> [THE STATE:] Did you actually put your signature on that page, sir?
>
> [Mr. Vilkhu:] I know this is my signature.
>
> [THE STATE:] What was on that page of instructions? Were those read to you before you looked at some photographs, if you can remember?
>
> [Mr. Vilkhu:] I recognize. He just asked me which is right person, so he show me pictures. Then I write down right person. Then he tell me, witness for my name and signature, this is right person, which one is, third one picture.
>
> [THE STATE:] Those photographs that were shown to you, would you recognize those photographs if you saw them again?

[Mr. Vilkhu:] Yes, sir.

[THE STATE:] May I approach, Your Honor?

THE COURT: Yes, sir.

. . . .

[THE STATE:] I'm going to show you State's Exhibit 4. Do you recognize that exhibit, sir? All those photographs, can you take a look at those, please?

[Mr. Vilkhu:] Yes. That's number 4, no.

[THE STATE:] The whole package—I understand you don't recognize photo number 4—the whole package, I'm calling that State's Exhibit 4. Don't confuse that with the numbers on the photographs.

Those photographs—State's Exhibit 4 that's a bunch of photographs; is it not?

[Mr. Vilkhu:] Yes.

[THE STATE:] Have you seen those photographs before?

[Mr. Vilkhu:] Yes, they show me—

[THE STATE:] Are those the photographs that were shown to you?

[Mr. Vilkhu:] Yes.

[THE STATE:] Did you recognize—out of all those photographs, did you recognize any of the photos?

[Mr. Vilkhu:] I just one recognize which is same person.

[THE STATE:] Which photograph did you recognize—you said the same person. Are you referring to the person that was in the store with the gun and took the shoes?

[Mr. Vilkhu:] This person.

[THE STATE:] The person that you recognized, out of all those photographs—how many people did you recognize out of all those photographs that are a part of State's Exhibit 4?

[Mr. Vilkhu:] This is six copy of the photo, so I recognize number 3.

[THE STATE:] Did you know any of the other people, besides 3?

[Mr. Vilkhu:] No, I never see.

[THE STATE:] Number 3, who was number 3? How did you see him beforehand? How did you know who that person was?

[Mr. Vilkhu:] Actually, I remember who, face-to-face talking. He just no have glasses this time in the picture.

[THE STATE:] In the photo number 3, is that the person with the gun who took the sneakers?

[Mr. Vilkhu:] Yes, sir.

[THE STATE:] Is that person here in court today?

[Mr. Vilkhu:] Yes.

[THE STATE:] Where is that person here in court today?

[Mr. Vilkhu:] On the right side—

[THE STATE:] I'd ask that the record reflect the witness has identified the defendant again, Your Honor.

THE COURT: So noted.

Our Supreme Court addressed a similar circumstance in *State v. Hunt*, 324 N.C. 343, 378 S.E.2d 754 (1989). In *Hunt*, the defendant argued that his constitutional right to assistance of counsel was violated during a lineup. *Hunt*, 324 N.C. at 354, 378 S.E.2d at 760. Our Supreme Court held "[a]ssuming arguendo that defendant's constitutional right of assistance of counsel at the lineup was violated, defendant waived that error by failing to object when the witness later identified him before the jury as the man he had picked out of the lineup." *Id.* at 355, 378 S.E.2d at 761. The Supreme Court then reviewed *State v. Hammond*, 307 N.C. 662, 300 S.E.2d 361 (1983), noting:

> In [*Hammond*], the defendant similarly objected prior to an in-court identification, and a voir dire was held. After the voir dire, however, the defendant failed to object once the identification was actually made in the presence of the jury. This Court held that defendant's failure to object to the witness's identification during trial waived defendant's right to have the propriety of the in-court identification considered on appeal.

*Hunt*, 324 N.C. at 355, 378 S.E.2d at 761; *see also State v. Rankins*, 133 N.C. App. 607, 515 S.E.2d 748 (1999).

Because Defendant failed to object during the examination of Mr. Vilkhu concerning the photo lineup, and because Defendant did not object to Mr. Vilkhu's in-court identification of Defendant, we conclude Defendant has waived any argument as to potential error in the photo lineup procedure, except as to plain error. Defendant does argue plain error in the alternative to each of his arguments and we, therefore, review for plain error.

### III.  Standard of Review

When a defendant fails to preserve instructional or evidentiary errors at trial for appellate review, our Court may nonetheless review for plain error. *See State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). Our Supreme Court recently clarified the process for plain error review:

> We now reaffirm our holding in *Odom* and clarify how the plain error standard of review applies on appeal to unpreserved instructional or evidentiary error. For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. *See Odom*, 307 N.C. at 660, 300 S.E.2d at 378. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error "had a probable impact on the jury's finding that the defendant was guilty." *See id.* (citations and quotation marks omitted); see also [*State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986)] (stating "that absent the error the jury probably would have reached a different verdict" and concluding that although the evidentiary error affected a fundamental right, viewed in light of the entire record, the error was not plain error). Moreover, because plain error is to be "applied cautiously and only in the exceptional case," *Odom*, 307 N.C. at 660, 300 S.E.2d at 378, the error will often be one that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings," *Odom*, 307 N.C. at 660, 300 S.E.2d at 378[.]

*State v. Lawrence*, ____ N.C. ____, ____, ____ S.E.2d ____, ____ (Filed Apr. 13, 2012, No. 100PA11).

### IV.  Results of the Photo Lineup

### A.  Irreparable Misidentification

**[3]**  On appeal, Defendant presents two theories under which he contends the trial court erred with respect to the results of the photo

lineup. Defendant first argues that the trial court committed plain error in overruling his objection to the State's admission of Exhibits 4 and 5 because the pre-trial identification procedure conducted by Officer Christaldi was impermissibly suggestive and created a substantial likelihood of misidentification.

Defendant contends that the trial court's findings of fact do not support its conclusion that Defendant's "due process rights had not been denied because neither the photo array nor the procedure used by the investigators had been 'impermissibly suggestive and conducive to irreparable mistaken identification.' " Defendant argues that the trial court's finding of fact that "the investigators violated the [EIRA] by using a non-independent administrator to conduct the lineup, and its failure to find any other facts that outweighed the biasing effect of this violation, established both the impermissibly suggestive nature of the lineup and the substantial risk of mistaken identity that it created." Thus, Defendant argues that Officer Christaldi's presence in the room was both an error which rendered the lineup impermissibly suggestive, and that it was also a violation of EIRA. We will address the EIRA violation below.

Our Courts apply "a two-step process for determining whether an identification procedure was so suggestive as to create a substantial likelihood of irreparable misidentification[.]" *State v. Marsh*, 187 N.C. App. 235, 239, 652 S.E.2d 744, 746 (2007), *overruled on other grounds by State v. Tanner*, 364 N.C. 229, 695 S.E.2d 97 (2010). " 'First, the Court must determine whether the identification procedures were impermissibly suggestive. Second, if the procedures were impermissibly suggestive, the Court must then determine whether the procedures created a substantial likelihood of irreparable misidentification.' " *Id.* (citation omitted).

Defendant contends that Officer Christaldi's presence in the room with Mr. Vilkhu created an impermissibly suggestive lineup procedure. The trial court found that Officer Christaldi, who was involved in the case, was present at the time of the photo lineup. Officer Christaldi was not an "independent administrator." However, the trial court found that Officer Christaldi refrained from making statements or gestures or otherwise communicating with Officer Lloyd or Mr. Vilkhu during the lineup. Defendant contends that "Officer Christaldi did not state whether she made any *unintentional* movements or body language that Mr. Vilkhu could have seen[.]" Defendant concedes that Officer Lloyd stated "that Officer Christaldi did not make any statements or do anything regarding her body lan-

guage when the photos were being shown." However, Defendant argues that Officer Lloyd's testimony was not competent evidence because Officer Lloyd testified that she could not see everything that Officer Christaldi did during the lineup because of where she was standing. Thus, Defendant's sole argument on this issue is that the photo lineup was impermissibly suggestive because one of the officers administering the procedure was involved in the investigation, and that officer may have made unintentional movements or body language which could have influenced Mr. Vilkhu.

Our Supreme Court has stated that the test for whether an identification procedure was impermissibly suggestive is "whether the totality of the circumstances reveals a pretrial procedure so unnecessarily suggestive and conducive to irreparable mistaken identity as to offend fundamental standards of decency and justice." *State v. Hannah*, 312 N.C. 286, 290, 322 S.E.2d 148, 151 (1984). We must consider the following factors: " 'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty shown by the witness, and the time between the offense and the identification.' " *State v. Johnson*, 161 N.C. App. 68, 73, 587 S.E.2d 445, 448 (2003) (citation omitted).

The record in the present case indicates that Mr. Vilkhu was seventy-five percent certain of his identification; Officer Christaldi's presence at the lineup appears to be the only irregularity in the procedure; Mr. Vilkhu did not describe any suggestive actions on the part of Officer Christaldi; and there was no testimony from the officers to indicate such. Further, the lineup was conducted within days of the robbery. With respect to Mr. Vilkhu's "opportunity to view the criminal at the time of the crime[,]" we note that the person who committed the robbery was in the store for forty-five or fifty minutes and spoke with Mr. Vilkhu a number of times. The only impediment to Mr. Vilkhu's view of the robber was a pair of sunglasses that the robber was wearing. Weighing the factors recounted in *Johnson*, and considering the facts in light of our case law discussing impermissible lineup procedures, we find no plain error in the trial court's determination that the lineup was not impermissibly suggestive. *See, e.g., State v. Leggett*, 305 N.C. 213, 222, 287 S.E.2d 832, 838 (1982) (holding that a photo lineup procedure not impermissibly suggestive when the defendant's photo was the only photograph shown in both of two separate lineup arrays); *State v. Osborne*, 83 N.C. App. 498, 501, 350 S.E.2d 909, 911 (1986) (holding an identification procedure was not

impermissibly suggestive when, among other factors, "there [was] no evidence of any improper inducement of [the witness] to choose one subject over another"). Because we have determined that the lineup was not impermissibly suggestive, our analysis of this issue ends here.

## B. EIRA Violation

[4] Defendant next argues that the trial court erred in denying his motion to suppress because of the EIRA violation. Defendant notes that the trial court provided a lesser remedy provided by EIRA, and contends that this prejudiced him. Defendant cites N.C. Gen. Stat. § 15A-974(a)(2) (2009) and argues that "evidence 'obtained as a result of a substantial violation of the provisions of [the N.C. Criminal Procedure Act, or Chapter 15A] must be suppressed.' " However, as the State points out in its brief, the statute provides: *"Upon timely motion,* evidence must be suppressed if: . . . it is obtained as a result of a substantial violation of [Chapter 15A]." N.C. Gen. Stat. § 15A-974(a)(2) (2011) (emphasis added). As noted above, Defendant did not make a timely motion to suppress the identification procedures.

Further, though the trial court did find that an EIRA violation occurred, we note that the trial court granted Defendant all of the remedies set forth in EIRA for resolving that error. N.C. Gen. Stat. § 15A-284.52(d) (2011) provides:

> All of the following shall be available as consequences of compliance or noncompliance with the requirements of this section:
>
> (1) Failure to comply with any of the requirements of this section shall be considered by the court in adjudicating motions to suppress eyewitness identification.
>
> (2) Failure to comply with any of the requirements of this section shall be admissible in support of claims of eyewitness misidentification, as long as such evidence is otherwise admissible.
>
> (3) When evidence of compliance or noncompliance with the requirements of this section has been presented at trial, the jury shall be instructed that it may consider credible evidence of compliance or noncompliance to determine the reliability of eyewitness identifications.

The trial court's order denying Defendant's motion to suppress contains the following concluding paragraph:

The specific failures to comply with the requirements of [EIRA] have been considered by the [trial c]ourt in adjudicating . . . Defendant's objection and this motion to suppress eyewitness identification.

. . . .

The [trial c]ourt further ORDERS, that with respect to the above-identified failure to comply with the specific requirements of the Eyewitness Identification Reform Act, such failure to comply shall be admissible in support of claims of eyewitness misidentification, as long as such evidence is otherwise admissible and, to the extent that such evidence of compliance or noncompliance with the requirements of the Act are presented at trial, the jury shall be instructed that it may consider credible evidence of compliance or noncompliance to determine the reliability of eyewitness identifications.

Defendant cites no case law in support of his argument that the EIRA violation involved in this case should warrant exclusion of the evidence. We are not persuaded that the trial court committed plain error by granting Defendant all other available remedies under EIRA, rather than excluding the evidence.

## VI. Mr. Vilkhu's In-Court Identification

[5] Defendant's final argument is that "the trial court committed plain error by allowing Mr. Vilkhu to make an in-court identification . . . where the identification was tainted by an impermissibly suggestive photo lineup . . . conducted prior to the trial." As we concluded above, the photo lineup was not impermissibly suggestive and Defendant's argument is without merit.

No error.

Judges STEELMAN and McCULLOUGH concur.