BRYANT, Judge.
Where defendant failed to preserve his argument against the admission of evidence concerning an out-of-court identification, we dismiss the issue. Where law enforcement officers seized clothing-a hoodie-relevant to identifying the suspect, the trial court did not err by admitting the clothing into evidence. Where the trial court acted within its authority to question a witness, we overrule defendant's argument to the contrary. Where there was sufficient evidence of an attempted robbery, we overrule defendant's challenge to the trial court's jury instruction.
On 16 November 2015, defendant Taveun Dayquan Davis was indicted on charges of murder, attempted first-degree murder, assault with a deadly weapon with intent to kill, and robbery with a dangerous weapon. Prior to trial, defendant filed a motion in limine to prohibit the admission into evidence of a clothing item-a hoodie-law enforcement officers seized during their investigation. In another pretrial motion, defendant moved to suppress both out-of-court and in-court identifications of him made as a result of a photo line-up conducted by law enforcement officers. In two separate orders entered 11 September 2017, the trial court denied defendant's motion in limine and motion to suppress. Defendant's trial commenced during the 14 August 2017 session of Lee County Criminal Superior Court, the Honorable C. Winston Gilchrist, Judge presiding.
At trial, the evidence tended to show that on 23 September 2015, Marcus Murchison (hereinafter "the victim") and his girlfriend, Heather Lindsay, were at their home located at 622 Beulah Brown Road, Sanford. Around 7:00 p.m., the victim was taking out the trash when Lindsay heard a male voice call the victim by name and engage him in conversation. The victim soon returned to the residence and walked into the living room followed by another male. Lindsay recognized the other male-defendant Taveun Dayquan Davis-having seen him twice before. At the time, Lindsay did not know defendant's real name but knew his street name. As soon as the victim sat down, defendant revealed a .45 caliber handgun. The victim stood up and reached into his pockets. "And once [the victim] went to reach to give [defendant] [the money] in [the victim's] pockets, [the victim] reached for the gun and they struggled ..., fighting and tussling for the gun." Defendant fired the first shot, and the victim fell to the floor.
A Then [defendant] walked over to the back of [the victim] as [the victim] was laying on his stomach, and then [defendant] shot [the victim] again in the back ..., and then [defendant] looked over at me and smiled and then shot [the victim] in the head .... [Lindsay crying].
When defendant turned his gun toward her, Lindsay pushed the gun away as it fired and ran outside. Outside, Lindsay encountered a woman who lived nearby, who called 9-1-1. Both Lindsay and the neighbor observed defendant exit Lindsay's home and head toward a nearby tree line and down a dirt path. Lindsay returned to her home to check on the victim. The victim died the next day. An autopsy of the victim's body revealed three gunshot wounds, each potentially fatal.
Following cross-examination, the trial court asked Lindsay whether defendant demanded anything of the victim and whether defendant took anything from the victim. Out of the presence of the jury, defendant objected to the trial court's questions.
On the night of the shooting, law enforcement officers from the Lee County Sheriff's Department and EMS personnel arrived at 622 Beulah Brown Road. One of the officers related Lindsay's description of defendant and which direction he had run to other responding officers: "[A] young black male ... wearing a light blue, or ... Carolina blue camouflage hoodie, headed off in the direction" of Ivy Drive (a dirt road) which looped back to Beulah Brown Road.
Several officers, including Sergeant Detective Steve Freeman, reported to a mobile home located in the direction the suspect was said to have run. Several vehicles were parked around the home. In the rear seat of one vehicle, Sergeant Freeman observed a multicolored camouflaged hoodie, similar to the description given of the suspect's clothing. A forensic biologist with the North Carolina State Crime Lab testified that the hoodie contained a DNA mixture from three contributors. Defendant was determined to be the "predominant DNA profile" within the mixture.
Lindsay testified that some twenty minutes after law enforcement officers arrived at her home, she was transported to the Lee County Sheriff's Department where she gave a statement and within eight hours of the shooting viewed a photographic lineup. Out of an array of six photographs, Lindsay identified defendant as the assailant. Again, during trial, Lindsay positively identified defendant in court as the person who shot her boyfriend.
After the conclusion of the evidence, the jury returned guilty verdicts against defendant on the charges of first-degree murder, attempted first-degree murder, assault with a deadly weapon with intent to kill, and attempted robbery with a firearm. The trial court entered judgment in accordance with the jury verdicts. In a consolidated judgment, defendant was sentenced to life imprisonment for first-degree murder and attempted first-degree murder. In separate judgments, defendant was sentenced to a term of 40 to 60 months for attempted robbery with a dangerous weapon, and 20 to 35 months for assault with a deadly weapon with intent to kill. All sentences were ordered to be served consecutively. Defendant appeals.
_________________________
On appeal, defendant argues that the trial court erred by (I) admitting testimony of his identification as a shooting suspect, (II) admitting the hoodie into evidence, (III) directly questioning Lindsay, and (IV) instructing the jury on the offense of attempted robbery.
I
Defendant first argues that the trial court erred by admitting evidence of his out-of-court identification and in-court identification in violation of his constitutional due process rights. More specifically, defendant contends the trial court erred by (A) denying his motion to suppress the photographic lineup and (B) holding defendant to a standard of prejudice higher than that prescribed by our Constitution in violation of defendant's right to due process. We disagree.
Defendant filed a pretrial motion to suppress the identification of him that Lindsay made while viewing a photo array lineup on the night of the murder. A pretrial hearing was conducted on the motion to suppress, after which the court rendered its ruling to deny the motion. At trial before the jury, the State asked Lindsay if the person she identified in the lineup was present in the courtroom, defendant did not object and Lindsey identified defendant. Following the State's direct examination, the trial court asked Lindsay whether the individual who shot the victim was in the courtroom. Again, Lindsay identified defendant without objection.
"In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1) (2019); see also N.C. Gen. Stat. § 15A-1446(b) (2017) ("Failure to make an appropriate and timely motion or objection constitutes a waiver of the right to assert the alleged error upon appeal ...."). "A pretrial ruling on a motion to suppress evidence is preliminary. Because the evidence may be different when offered at trial, a party has the responsibility of making a contemporaneous objection." State v. Waring , 364 N.C. 443, 468, 701 S.E.2d 615, 631 (2010) (citations omitted); see also State v. Golphin , 352 N.C. 364, 405, 533 S.E.2d 168, 198 (2000) ("As a pretrial motion to suppress is a type of motion in limine , [the defendant's] pretrial motion to suppress is not sufficient to preserve for appeal the question of the admissibility of [evidence] because [the defendant] did not object at the time the statement was offered into evidence." (citation omitted)).
In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.
N.C. R. App. P. 10(a)(4) (2019).
Here, on appeal, defendant does not request plain error review but requests that this Court invoke Rule 2[1] to review the trial court's denial of his motion to suppress on the merits. We decline to exercise our discretion under Rule 2. Accordingly, defendant's argument before this Court is subject to dismissal. Compare State v. Stowes , 220 N.C. App. 330, 337, 727 S.E.2d 351, 355 (2012) (holding the defendant waived any challenge, except plain error, to evidence of a photo lineup procedure, where the defendant failed to raise an objection to the admission of evidence before the trial court).
To the extent defendant raises a constitutional argument (a violation of due process) for the first time on appeal, we do not address this argument. State v. Roache , 358 N.C. 243, 291, 595 S.E.2d 381, 412 (2004). Accordingly, defendant's argument is dismissed.
However, even a cursory review indicates that defendant's argument would not warrant the relief he seeks. Our Supreme Court has held that due process analysis in the context of a suggestive photo lineup requires a two-part inquiry. The second part requires that the Court "determine whether the suggestive procedures created a substantial likelihood of irreparable misidentification." State v. Rogers , 355 N.C. 420, 432, 562 S.E.2d 859, 868 (2002) (citation omitted). Defendant does not argue that the photograph lineup procedures resulted in a substantial likelihood of irreparable misidentification. See id.
II
Next, defendant argues that the trial court abused its discretion by admitting seized clothing-the camouflage hoodie-into evidence. Specifically, defendant contends he was unfairly prejudiced by the admission of the hoodie because no eyewitness described the perpetrator's clothing consistent with the appearance of the hoodie law enforcement officers seized. We disagree.
We note that during a pretrial hearing on defendant's motion in limine, defendant argued there was no connection between the shooting suspect and the scene where law enforcement officers observed and seized the camouflaged hoodie. Defendant argued that eye witness accounts recorded on 23 September 2015 described the shooting suspect as wearing a "blue camouflaged hoodie" or "a blue Carolina hoodie," while the camouflaged hoodie law enforcement officers seized was grey. Defendant argued that "the probative value [of admitting the hoodie or any photographs of it] would be outweighed by the prejudicial effect": defendant's DNA was found on the hoodie. The trial court deferred ruling on the admissibility of the hoodie. During the course of the trial, defendant preserved his challenge to the admission of the hoodie.
" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2017). With some exceptions, "[a]ll relevant evidence is admissible .... Evidence which is not relevant is not admissible." Id. § 8C-1, Rule 402. Whether evidence is relevant is a question of law, which we review de novo . See State v. Kirby , 206 N.C. App. 446, 456, 697 S.E.2d 496, 503 (2010). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403. "We review a trial court's decision to exclude evidence under Rule 403 for abuse of discretion." State v. Triplett , 368 N.C. 172, 178, 775 S.E.2d 805, 809 (2015) (citation omitted).
Out of the presence of the jury and prior to ruling on defendant's motion in limine, the trial court heard testimony from Detective Freeman and Detective Sergeant Bill Marcum, both with the Lee County Sheriff's Department and both of whom responded to the report of the shooting at 622 Beulah Brown Road on 23 September 2015.
Detective Marcum testified that he responded to 622 Beulah Brown Road and was given a general description of the suspect,
a young black male between the ages of 19 and 23, about 5'6, 5'7, medium-length hair with twists, wearing a light blue, or as I call it, Carolina blue camouflage hoodie, headed off in the direction [of a dirt road that runs off of Ivy Drive and ... loops back to Beulah Brown Road].
Detective Freeman responded to the scene outside of the mobile home located at 374 Beulah Brown Road, which was in the direction the suspect was reported to have run. Detective Freeman testified to looking for a "[b]lack male wearing a multi-cam hoodie." Through the window of a vehicle parked behind the mobile home, Detective Freeman observed a "multi-cam hoodie on the back seat" and multiple shell casings on the ground behind the vehicle. As to the placement of the "multi-cam hoodie," on the backseat of the vehicle, Detective Freeman testified that it was unique in that "[t]he other items in the vehicle itself appeared to have mold, mildew and dust throughout the vehicle, and [the hoodie] appeared that it was just placed and had been recently put there."
We hold that the camouflaged hoodie seized from the backseat of the vehicle sitting behind the mobile home located in the general direction the suspect was reported running was relevant to the law enforcement officers' investigation into the shooting and identifying the shooting suspect. See N.C. Gen. Stat. §§ 8C-1, Rule 401 and Rule 402. Furthermore, we hold that trial court did not abuse its discretion by ruling that "the evidence [was] relevant and the probative value of the evidence outweigh[ed] any danger of unfair prejudice, confusion of the issues, or misleading of the jury." See id. § 8C-1, Rule 403. Accordingly, defendant's argument is overruled.
III
Next, defendant argues that the trial court erred by eliciting the sole evidence of an attempt to commit robbery. More specifically, defendant contends that the trial court exceeded its statutory authority under General Statutes, section 8C-1, Rule 614, by questioning Lindsay on whether defendant demanded money or property from the victim and eliciting from the witness the only evidence that defendant committed attempted robbery. Defendant contends this amounts to an expression of opinion by the trial court about the evidence. We disagree.
"The trial court's broad discretionary power to control the trial and to question witnesses to clarify testimony will not be disturbed absent a manifest abuse of discretion." State v. Rios , 169 N.C. App. 270, 281, 610 S.E.2d 764, 772 (2005) (citation omitted).
Pursuant to our Rules of Evidence, section 614, "[t]he court may interrogate witnesses, whether called by itself or by a party." N.C. Gen. Stat. § 8C-1, 614(b) (2017).
Furthermore, in order to insure justice for the parties, the trial court may ask clarifying questions of a witness to alleviate confusion. State v. Quick , 329 N.C. 1, 21-22, 405 S.E.2d 179, 192 (1991). Such questions are only prejudicial error if "by their tenor, frequency, or persistence, the trial judge expresses an opinion." State v. Rinck , 303 N.C. 551, 562, 280 S.E.2d 912, 921 (1981).
State v. Smarr , 146 N.C. App. 44, 49, 551 S.E.2d 881, 884-85 (2001) ; id. at 52, 551 S.E.2d at 886 ("A judge may ask questions ... that elicit testimony which proves an element of the State's case so long as he does not comment on the strength of the evidence or the credibility of the witness." (alteration in original) (citation omitted)).
Here, defendant argues that the trial court erred by questioning Lindsay and eliciting, what defendant describes as, the only evidence against defendant on the offense of attempted robbery:[2] "the trial court's line of questioning had the effect on the jury of expressing an opinion about the evidence because it demonstrated the [c]ourt was proving crimes the State had not."
But, as pointed out in the State's brief to this Court, before the trial court questioned Lindsay, defendant raised the issue of whether Lindsay informed law enforcement officers that defendant asked the victim for money.
Q And I just want to ask you, just for clarity, because there were different things that were relayed to [law enforcement officers]. Let me ask you this: Do you recall[ ] telling [a law enforcement officer] that came to the scene that [the victim] handed [a] black male cash? Do you recall telling him that?
A Yes. He tried to.
....
Q And that the black male said he wanted the whole amount?
A Yes.
Following that exchange, the trial court asked Lindsay to clarify her testimony.
THE COURT: Ma'am, I'm going to ask you one or two other questions. Bear with me just a minute. I'm trying to be sure that I am clear. Did the individual you have identified as the defendant, did he demand anything of [the victim]?
[Lindsay]: Yes, he told him to give him everything. Not anything specific, but everything.
While it is clear defendant elicited evidence of attempted robbery, even if we were to assume arguendo that Lindsay's testimony in response to the trial court's question was the only testimony to convince the jury that defendant demanded money or property from the victim, this does not amount to an expression of opinion by the trial court as to the strength of the evidence or Lindsay's credibility. See Smarr , 146 N.C. App. at 52, 551 S.E.2d at 886. We hold that the trial court's questioning of Lindsay did not exceed the scope of Rule 614. Accordingly, defendant's argument is overruled.
IV
Finally, defendant argues the trial committed prejudicial error by instructing the jury on the offense of attempted robbery contending the evidence was insufficient to support the instruction. We disagree.
"[Arguments] challenging the trial court's decisions regarding jury instructions are reviewed de novo by this Court." State v. Osorio , 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009).
"A person commits the felony offense of attempted robbery with a dangerous weapon if that person, 'with the specific intent to unlawfully deprive another of personal property by endangering or threatening his life with a dangerous weapon, does some overt act calculated to bring about this result.' " State v. Robinson , 355 N.C. 320, 341, 561 S.E.2d 245, 258 (2002) (quoting State v. Allison , 319 N.C. 92, 96, 352 S.E.2d 420, 423 (1987) ).[3]
In North Carolina, an intent does not become an attempt so long as the defendant stops his criminal plan, or has it stopped, prior to the commission of the requisite overt act .... A defendant can stop his criminal plan short of an overt act on his own initiative or because of some outside intervention. However, once a defendant engages in an overt act, the offense is complete, and it is too late for the defendant to change his mind.
State v. Miller , 344 N.C. 658, 669, 477 S.E.2d 915, 922 (1996) (citing State v. Davis , 340 N.C. 1, 12-13, 455 S.E.2d 627, 632-33 (1995) ).
In Miller , 344 N.C. 658, 477 S.E.2d 915, the defendant was convicted of murder and attempted armed robbery and on appeal argued there was insufficient evidence of attempted robbery where he abandoned his attempt. Id. at 670, 477 S.E.2d at 922.
[The Court held that the] defendant clearly intended to rob [the victim] and took substantial overt actions toward that end. His intent is evidenced by, inter alia , his statement to his cousin [that if he did not get any money for court, he was going to kill his next-door neighbor, the victim] and his own admission to the authorities. In furtherance of the intended robbery, [the] defendant took out his nine-millimeter handgun, sneaked up on [the victim], tried to fire, took the gun back down, removed the safety, and then fired two lethal shots into the head of the victim.... Thus, there is sufficient evidence of intent to commit armed robbery and overt acts toward its commission ....
Id. at 668-69, 477 S.E.2d at 922 (citation omitted); see also State v. Davis , 340 N.C. 1, 455 S.E.2d 627 (1995) (holding there was sufficient evidence to submit to the jury the issue of attempted armed robbery where the defendants entered a cash business, pulled out firearms, shot the owner, and then fled the scene without taking or demanding money or property).
On the record before us, defendant was invited into the victim's home. As soon as the victim sat down, defendant drew a .45 caliber handgun. Lindsay testified that before defendant shot the victim, "[defendant] told [the victim] to give him everything."
Even absent direct evidence that defendant took the money that the victim attempted to give him, defendant "committed an overt act in furtherance of the crime well before he left the scene." Miller 344 N.C. at 670, 477 S.E.2d at 922. Once defendant engaged in the overt act, the offense of attempted robbery with a dangerous weapon was complete. See id. at 669, 477 S.E.2d at 922.
Thus, a jury instruction for attempted robbery with a dangerous weapon was proper. We hold the trial court did not err by instructing the jury on attempted robbery with a dangerous weapon. Accordingly, defendant's argument is overruled.
DISMISSED IN PART; NO ERROR IN PART.
Report per Rule 30(e).
Judges DIETZ and MURPHY concur.

Pursuant to Rule 2 of our Rules of Appellate Procedure,
[t]o prevent manifest injustice to a party, or to expedite decision in the public interest, either court of the appellate division may, except as otherwise expressly provided by these rules, suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or upon its own initiative, and may order proceedings in accordance with its directions.
N.C. R. App. P. 2 (2019).

The essential elements of the crime of attempted robbery with a dangerous weapon are: (1) the unlawful attempted taking of personal property from another; (2) the possession, use or threatened use of a firearm or other dangerous weapon, implement or means; and (3) danger or threat to the life of the victim.
State v. Johnson , 208 N.C. App. 443, 447, 702 S.E.2d 547, 550 (2010) (citation omitted).

We note that General Statutes, section 14-87 ("Robbery with firearms or other dangerous weapons") was amended to include "attempted robbery with a dangerous weapon" in subsection (a1), effective 1 December 2017. See 2017 N.C. Sess. Laws. ch. 31, § 1.