STATE OF NORTH CAROLINA v. JOHN JOSEPH MACCIA

No. 339A83

(Filed 5 June 1984)

1. **Constitutional Law § 29; Criminal Law § 61.2— nontestimonial identification procedure—failure to give 72 hours notice—failure to move to suppress prior to trial—waiver of right to contest admissibility of evidence**

Although defendant's evidence tended to show that he was served with a nontestimonial identification order on August 4, 1982 after 5:30 p.m. and that the procedures were to occur at 1:00 p.m. on August 6, 1982, less than 72 hours after service of the order, defendant did not move to suppress prior to trial and, therefore, defendant waived his right to contest admissibility of evidence gathered as a result of the nontestimonial identification order. G.S. 15A-277, G.S. 15A-278, and Chapter 15A, Article 53.

State v. Maccia

2. **Criminal Law §§ 95.1, 169.3— cross-examination concerning prior acts with relation to a woman other than the rape victim—no limiting instruction requested—no objection to subsequent related questions**

   Defendant waived his right to object to the cross-examination of him concerning prior acts with relation to a woman other than the rape victim in this case where defendant did not request a limiting instruction requiring the jury to consider the evidence for purposes of impeachment only, and where the prosecutor subsequently returned to the subject of the stabbing incident on cross-examination without objection from the defendant, and the defendant then undertook to explain in detail the circumstances surrounding the stabbing.

3. **Criminal Law § 134.1— completing felony sentencing form for misdemeanor offense—remanded for resentencing**

   Where defendant was convicted of assault with a deadly weapon, a misdemeanor, the maximum sentence for which is two years imprisonment, although the trial court sentenced the defendant to two years, it completed a felony sentencing form and the judgment must be vacated and remanded for resentencing. G.S. 14-33.

APPEAL by the defendant from judgments of *Judge Henry L. Stevens, III* entered February 10, 1983 in Superior Court, DARE County.

The defendant was tried on two indictments, proper in form, charging him with rape and with assault with a deadly weapon inflicting serious injuries not resulting in death. The defendant pleaded not guilty to both charges. A jury found him guilty of first degree rape and assault with a deadly weapon. The trial court sentenced the defendant to life imprisonment for the rape conviction and two years for the assault conviction. The defendant appealed the rape conviction as a matter of right pursuant to G.S. 7A-27(a). On October 18, 1983, the Supreme Court allowed the defendant's motion to bypass the Court of Appeals on the assault conviction. Heard in the Supreme Court February 13, 1984.

*Rufus L. Edmisten, Attorney General, by William B. Ray, Assistant Attorney General, for the State.*

*Vernon, Vernon, Wooten, Brown & Andrews, P.A., by Wiley P. Wooten, for the defendant appellant.*

MITCHELL, Justice.

On appeal the defendant contends that the trial court erred in refusing to allow his motion to suppress certain evidence and

in allowing cross-examination of the defendant about alleged prior misconduct. We conclude that no reversible error was committed at trial, but because of an error in sentencing, we vacate the assault judgment and remand for entry of judgment and resentencing on that conviction.

The State presented evidence tending to show that on July 17, 1982, a twenty-one year old woman was raped at knifepoint on Hatteras Island in the Village of Avon. She testified that she was working on Hatteras Island for the summer. She had rented an apartment from the defendant's grandfather which was close to the site at which the rape occurred. She testified that on the evening of July 16, 1982, she attended a party on the beach, and that she left the party around midnight with a girl friend and a young man named Darren Hooper. The three walked to a shopping center in Avon, where the rape victim's girl friend left the group and went in another direction. The victim and Hooper walked to Hooper's residence where they talked outside for a few minutes. While they were talking, a man passed the couple, went down the street a short way, turned and walked past them again. After Hooper and the victim finished talking, he went inside his house and she started walking toward her apartment.

The victim testified that shortly after leaving Hooper, she entered onto an unpaved portion of the road. She was startled by the sudden appearance of a male who grabbed her arm and placed a hard pointed object against her throat. The assailant took her to some bushes and told her to remove her clothes. After she did so, he had intercourse with her. She asked her assailant whether he was the boy who lived in Benny's Landing, the area in which she also lived. The assailant answered, "I'm nobody." The victim testified that her attacker was wearing sneakers, blue jeans, a belt and no shirt. She thought that he had removed his clothes at the time of the attack. She stated that shortly after she was attacked, Darren Hooper approached the area and called her name. She began to cry, and her assailant got up and ran away naked. She, too, ran off in the direction of Hooper's home.

Hooper testified that when he and the victim parted in front of his house after the beach party, he went inside and prepared for bed. He started thinking about the man who earlier had passed them twice and decided to get up to make sure that the

victim had gotten home safely. He walked toward her apartment, and when he reached the place where she was found, he heard something in the bushes. He said he called the victim's name or "Is that you?". At that point a male jumped out of the bushes carrying a knife, slashed Hooper in the groin area and ran away. The woman then emerged from the bushes, crying and upset, and ran to Hooper's house.

The rape victim gave a description of her assailant to law enforcement officers, and both she and Hooper identified the defendant's photograph as that of the man who raped her and cut Hooper in the early morning hours of July 17, 1982. Detectives found various items of clothing and a pair of dirty white tennis shoes at the scene of the rape.

As a result of a nontestimonial identification order, the defendant's foot impressions were made in paint and ink and a cast was made of the imprint left inside the shoes found at the scene. Dr. Louise Robbins, an expert in the field of physical anthropology, testified that in her opinion the defendant's feet made the imprints inside the shoes found at the scene of the crime.

The defendant testified that he was visiting his grandfather at his house at Benny's Landing when the crime occurred. The defendant put on evidence which tended to show that the rape victim had met him before when the defendant helped her get into her apartment after the key given to her for the apartment failed to work. He testified that he was wearing shorts, flip-flops and a shirt on the night of the rape and that he had never been known to wear sneakers. He said he rarely wore a belt. He testified that he played cards with family members until about 10:30 on the night of the rape. After the card game, he had gone out to check on his mother's car which contained personal belongings. He testified that he noticed that a party was taking place on the beach and that he had gone to the party and stayed about ten minutes. He returned to his grandfather's house then and went to bed. The defendant testified that in the early morning hours of July 17, he heard someone trying to break into the house and that he woke up his grandfather and brother. The defendant and other witnesses testified that when the three went outside, they found that a screen had been removed from the house. They saw head-

lights at that time and encountered law enforcement officers investigating the rape that had occurred.

The defendant's evidence tended to show that both Hooper and the rape victim saw him on the day of the rape, and that neither indicated that the defendant was the person who had perpetrated the offenses. The shoes found at the scene were a size nine, and the defendant's evidence tended to show that he wore a size ten and a half or eleven. There was no evidence of semen present in vaginal smears taken from the victim or of a transfer of head or pubic hair from the defendant to her.

The defendant, through two assignments of error, contends his constitutional rights were violated by the trial court's denial of his motion to suppress certain evidence and by its allowance of cross-examination of the defendant concerning alleged prior acts. Having examined the record, we find no error in the guilt-innocence phase of the trial below.

[1] The defendant contends that his motion to suppress evidence obtained through nontestimonial identification procedures was improperly denied by the trial court because investigating law enforcement officers failed to comply with certain statutory requirements governing nontestimonial identification orders. The defendant claims he received inadequate notice of the procedures, resulting in violation of his constitutional right to counsel.

The General Assembly in Chapter 15A, Article 14 of the General Statutes has provided prosecutors with the opportunity to require suspects to submit to certain nontestimonial identification procedures such as fingerprinting and the measuring and testing of blood, urine, saliva, hair, handwriting and voice samples. Under Article 14, a person may be required to appear for such a procedure after a court order is served upon him. G.S. 15A-277 requires service of a copy of the order at least 72 hours in advance of the time for compliance unless the judge issuing the order determines that a delay will affect the probative value of the evidence.

An order to appear must state at what place and time the person is required to appear, grounds for suspecting the person of having committed a crime, procedures to be conducted and their approximate duration. G.S. 15A-278. The order must further state

that the person is entitled to have counsel present, that the person may request modification of the order, that the person will not be subjected to any interrogation during the procedure and that failure to appear may result in being held in contempt of court. *Id.*

The defendant's evidence tended to show that he was served with a nontestimonial identification order on August 4, 1982 after 5:30 p.m. The procedures were to occur at 1:00 p.m. on August 6, 1982, less than 72 hours after service of the order. The evidence showed that both the defendant and his mother read the order and that the defendant's mother attempted to obtain counsel for her son on August 5 and August 6, 1982. She was unable to obtain counsel in that period of time, but the defendant appeared at the ordered location at the scheduled time. The defendant contends that had he had the required 72 hours notice, he may well have been represented by counsel at the procedures.

Upon the defendant's objection to the evidence obtained through the procedures, the trial court conducted a *voir dire* hearing. The trial court determined that the defendant had full understanding of his constitutional rights at the time of the procedures, including his right to counsel, and that he freely, knowingly, and voluntarily waived those rights. Because we hold for other reasons that the defendant waived his right to contest the admissibility of the evidence, it is unnecessary to consider whether the trial court's conclusions were adequately supported by evidence.

Chapter 15A, Article 53, of the General Statutes sets forth the exclusive method for challenging evidence on the ground that its exclusion is constitutionally required. *State v. Jeffries*, 57 N.C. App. 416, 424, 291 S.E. 2d 859, 864, *cert. denied and appeal dismissed*, 306 N.C. 561, 294 S.E. 2d 374 (1982); *see also Wainwright v. Sykes*, 433 U.S. 72, *reh'g denied*, 434 U.S. 880 (1977) (stating that it is not impermissible for states to impose reasonable conditions on asserting motions to suppress evidence). The defendant has the burden of showing that he has complied with the procedural requirements of Article 53. *State v. Jeffries*, 57 N.C. App. at 424, 291 S.E. 2d at 864. In Superior Court a "defendant may move to suppress evidence *only prior to trial*" unless he falls within certain exceptions. G.S. 15A-975 (emphasis added).

When no exception to the general rule applies, failure to make a timely motion to suppress prior to trial is a waiver of any right to contest the inadmissibility of evidence on constitutional grounds. *State v. Detter*, 298 N.C. 604, 260 S.E. 2d 567 (1979). Since the defendant did not move to suppress prior to trial and no exception to the general rule applies, we hold that the defendant waived his right to contest the admissibility of evidence gathered as a result of the nontestimonial identification order.

[2] The defendant next contends the trial court erred in allowing cross-examination of him concerning prior acts with relation to a woman other than the rape victim in this case. After ascertaining that the defendant knew the woman, the prosecutor on cross-examination asked the defendant, "August 17, 1982, did you rape her?" The defendant answered that he did not and his counsel objected. The trial court sustained the objection and instructed the jury not to consider the testimony. Shortly afterward, the prosecutor asked the defendant whether, on August 7, he had stabbed that woman between the breasts. Defense counsel objected again and the trial court overruled the objection.

The defendant contends that the questions were improper as they were not intended to impeach his credibility as a witness but were directed toward pointing out similarities between the defendant's prior alleged acts and the crime for which he was being tried. In *State v. Williams*, 279 N.C. 663, 185 S.E. 2d 174 (1971), this Court stated that it is permissible for impeachment purposes to cross-examine a witness, including a criminal defendant,

> by asking disparaging questions concerning collateral matters relating to his criminal and degrading conduct. Such questions relate to matters within the knowledge of the witness, not to accusations of any kind made by others. We do not undertake here to mark the limits of such cross-examination except to say generally (1) the scope thereof is subject to the discretion of the trial judge, and (2) the questions must be asked in good faith.

*Id.* at 675, 185 S.E. 2d at 181 (citations omitted). Although it is true that the jury was not instructed in the present case to limit its consideration of the evidence to purposes of impeachment, it does not appear from the record that the defendant requested a limiting instruction. The admission of evidence which is compe-

tent for a restricted purpose will not be held error in the absence of a request by the defendant for limiting instructions. *State v. Montgomery,* 291 N.C. 91, 229 S.E. 2d 572 (1976); *State v. Goodson,* 273 N.C. 128, 159 S.E. 2d 310 (1968).

The defendant also contends that the cross-examination failed to satisfy standards that this Court set forth in *State v. Purcell,* 296 N.C. 728, 252 S.E. 2d 772 (1979). In *Purcell* the prosecutor asked the defendant, "You have killed somebody haven't you, Mr. Purcell?" This Court restated the *Williams* rule about impeachment relating to specific acts of criminal and degrading conduct, and then held the prosecutor's question to be improper because it did not refer to the time, place, victim or any of the circumstances of the alleged misconduct. Therefore, the question did not refer to a *particular* act of misconduct. We noted that killing in our society is not always wrong, and that since the question by its phrasing did not show that the act was wrong, the objection to it should have been sustained. *Id.*

The defendant in the case before us argues that the prosecutor's question did not by its phrasing show that the stabbing was wrong. It is true that a stabbing is not in and of itself a criminal or degrading act in our society, since a stabbing in self-defense, for example, may be justifiable. The defendant waived his objection to the question, however, when the prosecutor subsequently returned to the subject of the stabbing incident on cross-examination without objection from the defendant. The defendant then undertook to explain in detail the circumstances surrounding the stabbing. This Court has long held that when, as here, evidence is admitted over objection, and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost. *State v. Corbett,* 307 N.C. 169, 297 S.E. 2d 553 (1982); *State v. Chapman,* 294 N.C. 407, 241 S.E. 2d 667 (1978); 1 Brandis on North Carolina Evidence § 30 (1982).

For the foregoing reasons, we hold that the trial court did not commit reversible error in the guilt-innocence phase of the trial. We vacate the assault judgment, however, and remand for a judgment and resentencing on the assault conviction.

[3] Although the defendant was indicted for assault with a deadly weapon inflicting serious bodily injury, a felony, the jury found

him guilty of assault with a deadly weapon, a lesser included offense and a misdemeanor. G.S. 14-33. The maximum sentence for the misdemeanor is two years imprisonment. *Id.* Although the trial court sentenced the defendant to two years, it completed a felony sentencing form. The trial court indicated on the form that the defendant was convicted of assault with intent to kill, a felony, for which a sentence of 20 years imprisonment is permissible. Because we are unable to discern whether the trial court intended to sentence the defendant for a felonious assault or for the misdemeanor for which he was convicted, we must vacate the judgment in the assault case and remand that case to the Superior Court, Dare County, for entry of judgment for assault with a deadly weapon and for resentencing.

No. 82CRS5321—Assault with a Deadly Weapon—judgment vacated and remanded for a new sentencing hearing.

No. 82CRS4950—First Degree Rape—no error.