McGEE, Chief Judge.
 

 *526
 
 Jose Israel Rivera ("Defendant") appeals from his 18 August 2017 conviction for taking indecent liberties with a child. For the reasons stated below, we dismiss his appeal.
 

 I.
 
 Factual Basis and Procedure
 

 In the early fall of 2015, Defendant was living in Raleigh with his wife, his wife's parents, and his minor children. Defendant's nine-year-old daughter ("daughter") was a close friend of a ten-year-old girl ("G.") who lived nearby. G. was a regular visitor at Defendant's house, and also had a close relationship with Defendant. On 22 September 2015, Defendant's birthday, he came home from work between 4:30 p.m. and 5:00 p.m. Defendant celebrated his birthday at home with his family and G. by having dinner and watching a movie together. During the movie, Defendant's daughter and G. sat on the arms of an oversized armchair while Defendant sat in the seat of the chair-a blanket covered their laps. According to G., while they were watching the movie, Defendant moved his left hand under the blanket to her genital region, and touched her genitals both over and under her underwear. The touching continued for five to ten minutes, until Defendant's wife announced that Defendant's birthday cake was ready to eat and everyone went into the kitchen to eat cake. G. went home after eating the cake, but did not report the alleged touching to anyone that evening.
 

 *527
 
 Defendant's daughter went to G.'s house the next morning, 23 September 2015, and G. told her what had happened the night before. G. testified that Defendant's daughter told G. "to tell [G.'s] parents about what happened[,]" so they both went to G.'s parents' bedroom to report the alleged abuse. G. first told her father, and he then told her mother. G.'s parents immediately walked over to Defendant's house, where they encountered Defendant's
 
 *514
 
 wife and told her what G. had told them. G.'s parents called the police, and officers were dispatched to investigate the accusations. Detective Kevin Hubard ("Detective Hubard") of the Raleigh Police Department's Juvenile Unit interviewed G. at the police station later that day.
 

 After interviewing G., Detective Hubard and two additional officers went to Defendant's house, between 6:00 p.m. and 7:00 p.m. on 23 September 2015, to question Defendant about the allegations. After Detective Hubard talked to Defendant, and explained the accusations, Defendant and his wife agreed to drive to the police station in order to be interviewed. Once they arrived at the police station, Detective Hubard interviewed Defendant in one room, while another detective talked with Defendant's wife in another room. Detective Hubard again informed Defendant that the interview was voluntary, and Defendant again agreed to be interviewed. The interview, which was recorded on video, began at approximately 8:00 p.m. on 23 September 2015, and lasted "at least an hour."
 

 Approximately forty minutes into the interview, Defendant began to indicate that he "guess[ed] it [was] possible" that he had improperly touched G. the night before. Defendant stated: "I don't remember, I guess I must have because she says, it must have happened," "she's too close to me," "I want to move on from this[.]" However, Defendant vacillated between indicating that he had, or possibly could have, sexually assaulted G.; stating that he did not remember doing anything; and stating that he "would never" do something like that. At approximately 8:39 p.m., Detective Hubard suggested Defendant write an "apology" to G.'s parents, and Defendant agreed to do so. Detective Hubard gave Defendant paper and a pen, and left the interview room around 8:42 p.m. to allow Defendant to write the "apology." Defendant wrote a short statement in which he indicated that he was sorry for having hurt G. However, while he was alone in the interview room writing the "apology," he also made conflicting verbal statements concerning his culpability. Detective Hubard returned to the interview room and read the "apology" aloud. Defendant still continued to give conflicting statements concerning whether he did, or could have, molested G. Defendant
 
 *528
 
 asked to speak with his wife, and she was brought into the interview room and left alone with Defendant. Defendant's vacillation continued in his conversation with his wife. Defendant's wife left the interview room, and Defendant was then arrested at approximately 9:26 p.m. on 23 September 2015.
 

 Defendant was indicted for sexual offense with a child and taking indecent liberties with a child. Defendant's trial began on 14 August 2017, and pretrial motions were heard that morning before jury selection. At this pretrial motions hearing, Defendant's attorney informed the trial court that he wanted to move to suppress the inculpatory statements Defendant had made in his interview with Detective Hubard. The State objected, informing the trial court that Defendant had not filed a motion to suppress and that it had received no notice that Defendant was intending to move to suppress this evidence. Based upon Defendant's violation of the statutes governing motions to suppress, the trial court ruled that it would not consider Defendant's purported pretrial "motion to suppress," and the proceedings continued to trial.
 

 During the direct questioning of Detective Hubard, the State sought to introduce the video recording of Defendant's interview with Detective Hubard at the police station. Defendant's attorney informed the trial court that he would like to be heard, and the jury was sent out of the courtroom. Defendant asked the trial court's
 

 permission to voir dire [Detective Hubard] on the question of the last thing he said on direct examination about his decision to arrest, and this relates to my earlier motion to suppress. I believe in the context of this interview, [Detective Hubard] had made a decision to arrest and it occurred sometime before his final decision to put my client in custody.
 

 Defendant's attorney stated: "I would submit to the Court that [Detective Hubard] had made a decision to arrest [Defendant] at about 8:40 -- 8:40 p.m., where my client had decided to make an apology." The trial court stated that, in its opinion, it did not make
 
 *515
 
 "any difference what subjective decisions [Detective Hubard] made about arresting or not arresting" until those decisions were expressed to Defendant; the trial court then overruled Defendant's objection. Defendant's attorney responded: "Fair enough," and the trial proceeded. The video of Defendant's inculpatory statements was admitted into evidence and published to the jury. When asked if he had any further objections, Defendant's attorney stated that he did not, and the trial continued. Defendant was found not guilty of a
 
 *529
 
 sex offense with a child, but was convicted on 18 August 2017 of taking indecent liberties with a child. Defendant appeals.
 

 II.
 
 Analysis
 

 Defendant argues that the "trial court erred, and committed plain error, by admitting [Defendant's] statements [because Defendant] did not receive
 
 Miranda
 
 warnings[,]" and because Defendant's "statements were involuntary." Defendant has waived any right of appellate review of these arguments, and we dismiss.
 

 A.
 
 Waiver of Right of Appeal
 

 Defendant's arguments are based upon alleged violations of the Fifth and Fourteenth Amendments of the Constitution of the United States. Article 53, Chapter 15A of the North Carolina General Statutes, N.C. Gen. Stat. § 15A-971,
 
 et seq.
 
 ("Article 53"), "governs the suppression of unlawfully obtained evidence in our trial courts."
 
 State v. Miller
 
 , --- N.C. ----, ----,
 
 814 S.E.2d 81
 
 , 83 (2018). As our Supreme Court said:
 

 N.C.G.S. § 15A-974(a)(1) states that, "[u]pon timely motion, evidence must be suppressed if ... [i]ts exclusion is required by the Constitution of the United States[.]" And N.C.G.S. § 15A-979(d) specifies that "[a] motion to suppress evidence made pursuant to this Article is the
 
 exclusive
 
 method of challenging the admissibility of evidence" on constitutional grounds. (Emphasis added.) A defendant generally "may move to suppress evidence only prior to trial," N.C.G.S. § 15A-975(a) (2017), subject to a few, narrow exceptions that permit a defendant to move during trial,
 
 see
 

 id.
 

 § 15A-975(b), (c) (2017).
 

 In other words, the governing statutory framework requires a defendant to move to suppress at
 
 some
 
 point during the proceedings of his criminal trial. Whether he moves to suppress before trial or instead moves to suppress during trial because an exception to the pretrial motion requirement applies, a defendant cannot move to suppress for the first time
 
 after
 
 trial. .... When a defendant files a motion to suppress before or at trial
 
 in a manner that is consistent with N.C.G.S. § 15A-975
 
 ,
 
 that motion gives rise to a suppression hearing and hence to an evidentiary record pertaining to that defendant's suppression arguments
 
 . But when a defendant, such as defendant here, does
 
 not
 
 file a motion to suppress at the
 
 *530
 
 trial court stage, the evidentiary record pertaining to his suppression arguments has not been fully developed, and may not have been developed at all.
 

 Id.
 

 at ----,
 
 814 S.E.2d at 83
 
 (penultimate emphasis added). This Court recognized in an opinion affirmed
 
 per curiam
 
 by our Supreme Court:
 

 A defendant who seeks to suppress evidence upon a ground specified in N.C. Gen. Stat. § 15A-974 must comply with the procedural requirements outlined in Article 53, Chapter 15A of the North Carolina General Statutes.
 
 State v. Satterfield
 
 ,
 
 300 N.C. 621
 
 , 624,
 
 268 S.E.2d 510
 
 , 513 (1980) ;
 
 State v. Holloway
 
 ,
 
 311 N.C. 573
 
 , 576,
 
 319 S.E.2d 261
 
 , 264 (1984),
 
 habeas corpus granted
 
 ,
 
 Holloway v. Woodard
 
 ,
 
 655 F.Supp. 1245
 
 (1987)..... The burden is upon the defendant to show that he has complied with the procedural requirements of Article 53.
 
 Satterfield
 
 ,
 
 300 N.C. at 624-25
 
 ,
 
 268 S.E.2d at 513-14
 
 .
 

 State v. Creason
 
 ,
 
 123 N.C. App. 495
 
 , 499,
 
 473 S.E.2d 771
 
 , 773 (1996),
 
 affirmed
 
 , per curiam,
 
 346 N.C. 165
 
 ,
 
 484 S.E.2d 525
 
 (1997). In
 
 Holloway
 
 , the defendant's motion to suppress failed to include a supporting affidavit as required by N.C. Gen. Stat. § 15A-977(a), but the State did not object and the trial court conducted a suppression hearing on the defendant's Fourth Amendment argument, which it denied.
 
 State v. Holloway
 
 ,
 
 311 N.C. 573
 
 , 576-77,
 
 319 S.E.2d 261
 
 , 263-64 (1984).
 

 *516
 
 This Court, with one judge dissenting, agreed with the defendant's argument and remanded for the taking of additional evidence.
 
 Id.
 
 at 576,
 
 319 S.E.2d at 263
 
 . On appeal by the State, our Supreme Court held that failure to comply with the requirements of Article 53 constituted a waiver of the defendant's right to challenge the denial of his motion to suppress-
 
 even though that issue had already been litigated in the trial court
 
 :
 

 The defendant contends that because the State did not object to the sufficiency of the motion to suppress at trial, or to the evidentiary hearing held on the motion, the State cannot now raise the issue of the motion's deficiency for the first time before this Court. We find no merit in this contention. We have held that defendants by failing to comply with statutory requirements set forth in N.C.G.S. 15A-977 waive their rights to contest on appeal the admission of evidence on constitutional or statutory grounds.
 
 State v. Maccia
 
 ,
 
 311 N.C. 222
 
 ,
 
 316 S.E.2d 241
 
 (1984) ;
 
 State v. Satterfield
 
 ,
 
 300 N.C. 621
 
 ,
 
 268 S.E.2d 510
 
 (1980). The
 
 *531
 
 State's failure to object to the form of the motion affects neither that waiver nor the authority statutorily vested in the trial court to deny summarily the motion to suppress when the defendant fails to comply with the procedural requirements of Article 53. The trial court could properly have denied the defendant's motion to suppress based on the defendant's procedural failures alone, and we therefore reverse the decision of the Court of Appeals.
 

 Holloway
 
 , 311 N.C. at 578,
 
 319 S.E.2d at 264
 
 .
 

 In the present case, Defendant
 
 did not file
 
 a motion to suppress-or give proper notice and file other required documents-as directed by N.C. Gen. Stat. §§ 15A-972, 15A-974, 15A-975, 15A-976, 15A-977, and 15A-979(d) (2017) ("A motion to suppress evidence made pursuant to this Article is the exclusive method of challenging the admissibility of evidence upon the grounds specified in G.S. 15A-974."). The State, based upon violations of N.C.G.S. § 15A-977,
 
 [1]
 
 objected, and the trial court ruled: "Okay. I'm not going to entertain a motion to suppress at this stage." No hearing was conducted, but the trial court opined, based on the forecast of evidence, that Detective Hubard's questioning of Defendant did not appear to constitute custodial interrogation for
 
 Miranda
 
 purposes. The trial court again stated that it would not consider Defendant's motion to suppress because "the procedural bar at this stage [Article 53] would bar the consideration of a motion to suppress on this matter. And so I will not entertain that." The trial court's ruling was clearly correct, and we affirm it.
 
 Creason
 
 ,
 
 123 N.C. App. at 499
 
 ,
 
 473 S.E.2d at 773
 
 .
 

 During direct questioning of Detective Hubard at trial, the State sought to introduce the video recording of Defendant's interview with Detective Hubard at the police station. Defendant informed the trial court that he would like to be heard, and the jury was sent out of the courtroom. Defendant's attorney asked the trial court's "permission to voir dire [Detective Hubard] on the question of the last thing [Detective Hubard] said on direct examination about his decision to arrest, and this relates to my earlier motion to suppress.
 
 [
 

 2
 

 ]
 
 " Defendant's attorney stated: "I believe in the context of this interview, [Detective Hubard] had made a decision to arrest and it occurred sometime before his final decision to put my client in custody." Defendant's attorney
 
 *532
 
 stated: "I would submit to the Court that [Detective Hubard] had made a decision to arrest [Defendant] at about 8:40 -- 8:40 p.m., where my client had decided to make an apology." Defendant's argument was that once Detective Hubard decided that he was going to arrest Defendant-when Defendant agreed to write out an "apology"-the interview "segue[d] from a non-custodial
 
 *517
 
 interview to a custodial interview" because "during the course of that interview the police officers did make a decision to arrest. And at that point, ... the obligation of [Detective Hubard] to put [Defendant] on notice with Miranda warning was" triggered. Defendant's sole authority for his argument was
 
 Dickerson v. United States
 
 ,
 
 530 U.S. 428
 
 ,
 
 120 S.Ct. 2326
 
 ,
 
 147 L.Ed.2d 405
 
 (2000). The trial court did not find Defendant's legal authority persuasive, stating:
 

 I don't see the factual parallel. [
 
 Dickerson
 
 ] sounds like a custodial interrogation where no Miranda was given. And the Fourth Circuit said since it was a voluntary statement that Miranda was not required. And the [Supreme Court] in 2000 is saying it doesn't matter whether its voluntary or not, if it's a custodial interrogation, Miranda warning[s are] required. I'm not sure I'm seeing the principle of law that I asked you about, mainly whether in the course of a non-custodial interview if someone makes an inculpatory statement, whether at that point in the interview law enforcement is required to provide a Miranda Warning because the -- can you point me to the[ ] facts that support that position?
 

 Defendant's attorney did not
 
 voir dire
 
 Detective Hubard concerning his questioning of Defendant at the police station, nor did Defendant's attorney request the trial court to view the video of Defendant's questioning prior to ruling on his objection to the introduction of the evidence of Defendant's inculpatory statements.
 
 [3]
 

 State v. Roper
 
 ,
 
 328 N.C. 337
 
 , 361,
 
 402 S.E.2d 600
 
 , 614 (1991) (when the defendant desires to make a motion to suppress at trial, he "must ... specify that he is making a motion to suppress and request a voir dire."). The trial court considered
 
 *533
 
 Defendant's argument to be an objection to the admission of the video, not a motion to suppress, and it overruled Defendant's objection. The trial court expressed its ruling as follows:
 

 I'm going to
 
 overrule the objection
 
 that at a certain point of this non-custodial interview, based on statements made by [ ] Defendant, it made any difference what subjective decisions [Detective Hubard] made about arresting or not arresting [ ] Defendant. It still has the character of a non-custodial interview, not requiring Miranda Warnings, so therefore I would
 
 overrule the objection
 
 on that basis. (Emphasis added).
 

 Defendant's attorney responded: "Fair enough[,]" and the trial proceeded.
 

 The objection made by Defendant's attorney did not constitute a motion to suppress pursuant to Article 53, nor could it:
 

 A defendant may move to suppress evidence at trial only if he demonstrates that he did not have a reasonable opportunity to make the motion before trial; or that the State did not give him sufficient advance notice (twenty working days) of its intention to use certain types of evidence; or that additional facts have been discovered after a pretrial determination and denial of the motion which could not have been discovered with reasonable diligence before determination of the motion. G.S. 15A-975.
 

 State v. Satterfield
 
 ,
 
 300 N.C. 621
 
 , 625,
 
 268 S.E.2d 510
 
 , 514 (1980) ;
 
 see also
 

 State v. Maccia
 
 ,
 
 311 N.C. 222
 
 , 227-28,
 
 316 S.E.2d 241
 
 , 244 (1984) (citations omitted) ("The defendant has the burden of showing that he has complied with the procedural requirements of Article 53. In Superior Court a 'defendant may move to suppress evidence
 
 only prior to trial
 
 ' unless he falls within certain exceptions. G.S. 15A-975 (emphasis added)."). Because none of the exceptions set forth in N.C.G.S. § 15A-975 apply in the present case, Defendant could not timely make a motion to suppress during the trial.
 

 Id.
 

 ;
 
 State v. Stowes
 
 ,
 
 220 N.C. App. 330
 
 , 333,
 
 727 S.E.2d 351
 
 , 354 (2012) (citations omitted) ("In the present case, Defendant objected at trial to the introduction of Exhibits 4 and 5 by the State and the trial court itself elected to treat Defendant's objection as a motion to suppress.
 

 *518
 
 The trial court then denied Defendant's motion to suppress and overruled the objection. We hold that Defendant's 'motion to suppress' was not timely, and the trial court did not err in denying it.");
 
 State v. Harris
 
 ,
 
 71 N.C. App. 141
 
 , 143-44,
 
 321 S.E.2d 480
 
 , 482-83 (1984) (trial court properly denied the defendant's attempted motion
 
 *534
 
 to suppress at trial without conducting a
 
 voir dire
 
 hearing where none of the N.C.G.S. § 15A-975 exceptions applied). Because Defendant has failed in his burden of establishing that his purported "motion to suppress" at trial was made in compliance with the requirements of N.C.G.S. § 15A-975, Defendant waived any right to appellate review, and the trial court did not err in denying it on that basis alone.
 
 Holloway
 
 , 311 N.C. at 578,
 
 319 S.E.2d at 264
 
 .
 

 "The defendant has the burden of establishing that the motion to suppress is both timely and in proper form."
 
 Roper
 
 ,
 
 328 N.C. at 360
 
 ,
 
 402 S.E.2d at 613-14
 
 (citations omitted). Defendant has not met this burden. We hold that Defendant waived appellate review of both his purported "motions to suppress," and we are required to dismiss these arguments pursuant to the holdings in
 
 Creason
 
 ,
 
 346 N.C. at 165
 
 ,
 
 484 S.E.2d at 525
 
 ,
 
 affirming
 
 , per curiam,
 
 Creason
 
 ,
 
 123 N.C. App. at 499
 
 ,
 
 473 S.E.2d at 773
 
 , and
 
 Holloway
 
 , 311 N.C. at 577-78,
 
 319 S.E.2d at 264
 
 . In addition, our Supreme Court recently held that a defendant waives even plain error review if his purported "motion to suppress" is not made in accordance with the requirements of Article 53.
 
 Miller
 
 , --- N.C. at ----,
 
 814 S.E.2d at 83-86
 
 .
 

 B.
 
 Ineffective Assistance of Counsel
 

 Defendant further argues that his attorney was constitutionally ineffective because the attorney failed to properly move to suppress Defendant's inculpatory statements. The test to determine if a defendant's attorney's representation has violated the defendant's Sixth Amendment rights was set forth by the United States Supreme Court in
 
 Strickland v. Washington
 
 ,
 
 466 U.S. 668
 
 , 687,
 
 104 S.Ct. 2052
 
 , 2064,
 
 80 L.Ed.2d 674
 
 , 693 (1984) (the "
 
 Strickland
 
 test"). Pursuant to the
 
 Strickland
 
 test, in order to prevail on a claim of ineffective assistance of counsel ("IAC"), a defendant must prove two things:
 

 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial,
 
 a trial whose result is reliable
 
 . (Emphasis added)."
 

 State v. Braswell
 
 ,
 
 312 N.C. 553
 
 , 562,
 
 324 S.E.2d 241
 
 , 248 (1985) (citation omitted).
 

 *535
 
 However, it is rare that this Court will be in a position to decide a defendant's IAC claim on direct appeal: "Generally, a claim of ineffective assistance of counsel should be considered through a motion for appropriate relief before the trial court in post-conviction proceedings and not on direct appeal."
 
 State v. Allen
 
 , --- N.C. App. ----, ----,
 
 821 S.E.2d 860
 
 , 861 (2018) (citation omitted). This Court will only consider IAC claims brought on direct appeal " 'when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing.' "
 
 State v. Thompson
 
 ,
 
 359 N.C. 77
 
 , 122-23,
 
 604 S.E.2d 850
 
 , 881 (2004) (citation omitted). "Thus, when this Court reviews ineffective assistance of counsel claims on direct appeal and determines that they have been brought prematurely, we dismiss those claims without prejudice, allowing defendant to bring them pursuant to a subsequent motion for appropriate relief in the trial court."
 
 Id.
 
 at 123,
 
 604 S.E.2d at 881
 
 (citation omitted).
 

 We agree with Defendant that the record before us demonstrates that his "counsel's performance was deficient[,]" thus satisfying the first prong of the
 
 Strickland
 
 test.
 
 Braswell
 
 ,
 
 312 N.C. at 562
 
 ,
 
 324 S.E.2d at 248
 
 (citation omitted). Defendant's counsel failed to file a pretrial motion to suppress as was required by Article 53. This failure prevented Defendant from being afforded the opportunity to present his evidence and arguments
 
 *519
 
 in a
 
 voir dire
 
 suppression hearing and, therefore, no ruling was obtained nor order entered. This failure also prevented Defendant from the ability to obtain appellate review of the trial court's ruling and order in the event his motion to suppress had been denied. The fact that Defendant's counsel attempted to make an oral motion to suppress at the pretrial motions hearing demonstrates that this failure was not intentional nor part of any trial strategy. Defendant's "counsel was not functioning as the 'counsel' guaranteed [D]efendant by the Sixth Amendment."
 

 Id.
 

 (citation omitted).
 

 However, the record before us is insufficient for review of the prejudice prong of the
 
 Strickland
 
 test on direct appeal. In order to meet the requirements of proving prejudice, Defendant must show " 'that [his] counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable.' "
 

 Id.
 

 (citation omitted) (emphasis removed). "A defendant must demonstrate a reasonable probability that the trial result would have been different absent counsel's error."
 
 State v. Warren
 
 ,
 
 244 N.C. App. 134
 
 , 145,
 
 780 S.E.2d 835
 
 , 842 (2015) (citation omitted). Defendant argues: "Had [Defendant's attorney] properly preserved these issues, there is a reasonable probability that either (1) the trial court
 
 *536
 
 would have suppressed the statements and at least one juror would have voted to acquit, or (2) this Court would reverse the denial of the suppression motion and vacate the conviction[.]" In order for this Court to hold that Defendant has met his burden of showing prejudice pursuant to either of these arguments, we would have to hold, at least implicitly, that there was no legitimate possibility that additional relevant evidence would have been elicited had a suppression hearing been conducted in this case. We cannot know what evidence might have been produced in a hearing that never occurred and, therefore, direct review of an IAC claim on facts similar to those before us will rarely be appropriate:
 

 "In order to determine whether a defendant is in a position to adequately raise an ineffective assistance of counsel claim, we stress this Court is limited to reviewing this [argument] only on the record before us, without the benefit of information provided by [the State, or by] defendant to trial counsel, as well as defendant's thoughts, concerns, and demeanor, that could be provided in a full evidentiary hearing on a motion for appropriate relief."
 

 State v. Perry
 
 , --- N.C. App. ----, ----,
 
 802 S.E.2d 566
 
 , 573,
 
 disc. review denied
 
 ,
 
 370 N.C. 377
 
 ,
 
 807 S.E.2d 568
 
 (2017) (citation omitted).
 

 Without a suppression hearing, the State is not given the opportunity to tailor its evidence and arguments in response to the arguments set forth in a defendant's motion to suppress. Further, the defendant's counsel cannot fully present his legal arguments, introduce evidence in support of his arguments, nor directly counter the State's evidence through cross-examination or the admission of contradictory evidence.
 

 In the present case, Defendant now asks this Court to make a determination on whether there was "a reasonable probability that the trial result would have been different absent counsel's error,"
 
 Warren
 
 ,
 
 244 N.C. App. at 145
 
 ,
 
 780 S.E.2d at 842
 
 (citation omitted), based not on the evidence and arguments that Defendant's counsel and the State would have presented at a suppression hearing, but on the arguments Defendant's appellate counsel has decided to present to this Court based upon the evidence presented at trial, which was not tailored toward the issues Defendant would have raised during a pretrial suppression hearing.
 

 In
 
 Miller
 
 , our Supreme Court held that a request for plain error review is not an appropriate method for making a constitutional challenge to the admission of evidence when there has been no suppression hearing due to the defendant's counsel's failure to follow the requirements of Article 53.
 
 Miller
 
 , --- N.C. App. at ----,
 
 814 S.E.2d at 85
 
 .
 

 *537
 
 In reaching its holding, the Court thoroughly discussed the dangers inherent in conducting a prejudice review on appeal when the issue has not been litigated in a suppression hearing at trial.
 
 Miller
 
 , --- N.C. App. at ----,
 
 814 S.E.2d at 83-85
 
 . Although
 
 Miller
 
 involves plain error review, the defendant's burden to demonstrate prejudice on plain error review is very similar to the defendant's burden to demonstrate prejudice on direct appeal of an
 
 *520
 
 IAC claim, and we find the Court's reasoning applicable to Defendant's IAC argument in the present case.
 

 The procedural facts in
 
 Miller
 
 are analogous to the procedural facts in the present case-the defendant in
 
 Miller
 
 failed to file any pretrial motion to suppress in accordance with Article 53, and failed to move to suppress during trial.
 
 [4]
 
 Instead, the defendant raised an argument that the relevant evidence had been obtained in violation of the Fourth Amendment for the first time on appeal: "[The d]efendant argued to the Court of Appeals that the trial court 'plainly erred' by 'admitting the cocaine and testimony about the cocaine,' and that the seizure of the cocaine resulted from various Fourth Amendment violations."
 
 Miller
 
 , --- N.C. App. at ----,
 
 814 S.E.2d at 82
 
 . In overruling this Court's decision to conduct plain error review-and thereby overruling the decision to grant the defendant a new trial-our Supreme Court discussed why a defendant's failure to comply with Article 53-when this failure prevents a proper motion to suppress hearing from being conducted by the trial court-significantly impairs the ability to conduct meaningful or fair appellate review:
 

 Whether [a defendant] moves to suppress before trial or instead moves to suppress during trial because an exception to the pretrial motion requirement applies, a defendant cannot[, pursuant to Article 53,] move to suppress for the first time
 
 after
 
 trial.
 
 [
 

 5
 

 ]
 
 By raising his Fourth Amendment arguments for the first time on appeal, however, that is effectively what defendant has done here. When a defendant files a motion to suppress before or at trial in a manner that is consistent with N.C.G.S. § 15A-975, that motion gives rise to a suppression hearing and hence
 
 *538
 
 to an evidentiary record pertaining to that defendant's suppression arguments. But when a defendant, such as defendant here, does
 
 not
 
 file a motion to suppress at the trial court stage, the evidentiary record pertaining to his suppression arguments has not been fully developed, and may not have been developed at all.
 

 To find plain error, an appellate court must determine that an error occurred at trial. The defendant, additionally, must demonstrate that the error was "fundamental"-meaning that the error "had a probable impact on the jury's finding that the defendant was guilty" and "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." But here, considering the incomplete record and the nature of defendant's claims, our appellate courts cannot conduct appellate review to determine whether the Fourth Amendment required suppression. [The d]efendant asked the Court of Appeals ... to review whether defendant voluntarily consented to a search that resulted in the discovery of incriminating evidence. Fact-intensive Fourth Amendment claims like these require an evidentiary record developed at a suppression hearing. Without a fully developed record, an appellate court simply lacks the information necessary to assess the merits of a defendant's plain error arguments.
 

 When a defendant does not move to suppress, moreover, the State does not get the opportunity to develop a record pertaining to the defendant's ... claims. Developing a record is one of the main purposes of a suppression hearing. At a suppression hearing, both the defendant and the State can proffer testimony and any other admissible evidence that they deem relevant to the trial court's suppression determination. In this case, though, the trial court did not conduct a suppression hearing because defendant never moved to suppress [the] evidence[.] And because no suppression hearing took place, we do not know whether the State would have produced additional evidence at a suppression hearing, or, if the State had done so, what that
 
 *521
 
 evidence would have been.
 
 Cf.
 

 Cardinale v. Louisiana
 
 ,
 
 394 U.S. 437
 
 , 439,
 
 89 S.Ct. 1161
 
 , 1163,
 
 22 L.Ed.2d 398
 
 (1969) ("Questions not raised below are those on which the record is very likely to be inadequate, since it certainly
 
 *539
 
 was not compiled with those questions in mind."). To allow plain error review in a case like this one, therefore, "would 'penalize the [g]overnment for failing to introduce [at trial] evidence on probable cause for arrest [or other matters bearing on the defendant's claim] when defendant's failure to raise an objection before or during trial seemed to make such a showing unnecessary.' ").
 

 Miller
 
 , --- N.C. App. at ----,
 
 814 S.E.2d at 83-84
 
 (citations omitted) (emphasis in original). The same concerns are present on direct appeal of an IAC claim when no suppression hearing has been conducted. This Court can only surmise who might have testified at the suppression hearing and what evidence that testimony would have elicited. As the Court in
 
 Miller
 
 stated: "We just do not know, because no suppression hearing occurred."
 

 Id.
 

 at ----,
 
 814 S.E.2d at 84
 
 . It is therefore difficult, if not impossible, to conduct meaningful prejudice review.
 

 The
 
 Miller
 
 Court also discussed the potential for intentional abuse of the system when appellate review is allowed without the full consideration of the relevant issues and evidence afforded the trial court pursuant to a suppression hearing:
 

 [A] defendant could unfairly use plain error review to his tactical advantage. For instance, a defendant might determine that his chances of winning a motion to suppress before or at trial are minimal because he thinks that, once all of the facts come out, he will likely lose. But if we were to allow plain error review when no motion to suppress is filed and hence no record is created, that same defendant might wait to raise a Fourth Amendment issue until appeal and take advantage of the undeveloped record-a record in which some or all of the important facts may never have been adduced-to claim plain error.
 
 Cf.
 

 United States v. Chavez-Valencia
 
 ,
 
 116 F.3d 127
 
 , 132 (5th Cir. 1997) ("If, at trial, the government assumes that a defendant will not seek to suppress certain evidence, the government may justifiably conclude that it need not introduce the quality or quantity of evidence needed otherwise to prevail.").
 

 Id.
 

 at ----,
 
 814 S.E.2d at 84-85
 
 (citation omitted). Applying the reasoning in
 
 Miller
 
 , the
 
 potential
 
 that a defendant will seek direct appeal for an IAC claim like the one before us, based on the failure of Defendant's counsel to properly move to suppress evidence, could prompt the State to attempt to introduce evidence at trial "that the defendant may
 
 *540
 
 or may not later challenge on appeal. On the other hand, if the State [chooses] not to present evidence supporting [the voluntariness of] an unchallenged [inculpatory statement], it could risk reversal on an undeveloped record under the [IAC] standard."
 
 Id
 
 . at ----,
 
 814 S.E.2d at 85
 
 (citation omitted).
 

 The Court in
 
 Miller
 
 held that "the Court of Appeals should not have conducted plain error review in the first place," and that our Supreme Court did "not need to address (and, based on our analysis, it would not be possible for us to address) the other issue before us-namely, whether the Court of Appeals reached the right conclusion in its plain error analysis."
 

 Id.
 

 Prior to
 
 Miller
 
 , this Court has decided whether the record was sufficient for direct review of defendants' IAC claims based on failure to properly move for suppression of evidence on a case-by-case basis.
 
 [6]
 
 However, we have shown reluctance to conduct direct review of an IAC claim when the claim is based on evidence admitted at trial after counsel's failure to obtain a suppression hearing due to violations of Article 53. In a recent unpublished opinion, we discussed this Court's reluctance:
 

 [T]his Court repeatedly has held that when the trial court denies a defendant's motion
 
 *522
 
 to suppress as untimely, "we cannot properly evaluate defendant's claim of ineffective assistance of counsel on direct appeal because no evidentiary hearing was held on defendant's motion to suppress."
 
 State v. Johnson
 
 ,
 
 203 N.C. App. 718
 
 , 722,
 
 693 S.E.2d 145
 
 , 147 (2010). Likewise, here, we cannot determine whether counsel's conduct-even assuming it was deficient-prejudiced Otto because the trial court did not conduct an evidentiary hearing on the motion to suppress, and the court had no occasion, during trial, to make findings concerning the admission of the challenged evidence. As we explained in
 
 Johnson
 
 , "[b]ased upon this record, it is simply not possible for this Court to adjudge whether defendant was prejudiced by counsel's failure to file the motion to suppress within the allotted time."
 

 Id.
 

 *541
 

 State v. Otto
 
 , --- N.C. App. ----,
 
 822 S.E.2d 792
 
 ,
 
 2019 WL 438392
 
 *2 (2019) (unpublished);
 
 see also
 

 State v. Kinch
 
 ,
 
 314 N.C. 99
 
 , 106,
 
 331 S.E.2d 665
 
 , 669 (1985) ("Defendant also alleges that his sixth amendment right to effective assistance of counsel at trial was violated. We cannot properly determine this issue on this direct appeal because an evidentiary hearing on this question has not been held."). We agree with the reasoning in
 
 Otto
 
 , and find that it comports with the reasoning discussed above in
 
 Miller
 
 . We believe that
 
 Miller
 
 , as well as precedent in which our appellate courts considered direct appeal of IAC claims based on errors by counsel that denied defendants the opportunity, by
 
 voir dire
 
 hearing, to challenge the admission of evidence, demonstrates that direct review in cases like the present case is not appropriate unless it is clear that an MAR proceeding would not result in additional evidence that could influence our decision on appellate review.
 

 Therefore, we hold that the current record is insufficient for direct review of Defendant's IAC claim, and we dismiss the claim "without prejudice to defendant's right to file a motion for appropriate relief in the superior court based upon an allegation of ineffective assistance of counsel. N.C. Gen. Stat. § 15A-1415(b)(3) [.]"
 
 Kinch
 
 ,
 
 314 N.C. at 106
 
 ,
 
 331 S.E.2d at
 
 669 ;
 
 State v. Fair
 
 ,
 
 354 N.C. 131
 
 , 167,
 
 557 S.E.2d 500
 
 , 525 (2001).
 

 DISMISSED.
 

 Judges HUNTER, JR. and HAMPSON concur.
 

 [1]
 

 "A motion to suppress evidence in superior court made before trial must be in writing and a copy of the motion must be served upon the State. The motion must state the grounds upon which it is made. The motion must be accompanied by an affidavit containing facts supporting the motion."
 

 [2]
 

 The State had asked Detective Hubard whether he had at any point during the interview told Defendant "that he was not free to leave." Detective Hubard responded: "The only time anything like that would have been said was when we told him he was under arrest. At that point I was no longer interviewing him."
 

 [3]
 

 Although Defendant's attorney initially stated that he wanted to
 
 voir dire
 
 Detective Hubard concerning when Detective Hubard had decided to arrest Defendant, he did not
 
 voir dire
 
 Detective Hubard concerning this or any other subject; did not make any follow-up request to
 
 voir dire
 
 Detective Hubard prior to the ruling of the trial court; nor request
 
 voir dire
 
 to preserve Detective Hubard's testimony for appellate review.
 

 [4]
 

 There is no indication that the defendant in
 
 Miller
 
 could have made a motion to suppress during trial because, as in the present case, there was no evidence that any of the requirements of N.C.G.S. § 15A-975 allowing a motion to suppress during trial applied.
 

 [5]
 

 The defendant in
 
 Miller
 
 did not make any motion to suppress after his trial; the Court is simply stating that the defendant's request for plain error review on appeal is akin to such a request, which Article 53 does not allow.
 

 [6]
 

 See, e.g.,
 

 State v. Canty
 
 ,
 
 224 N.C. App. 514
 
 , 516-17,
 
 736 S.E.2d 532
 
 , 535 (2012) (conducting direct review of IAC claim when trial testimony and video evidence sufficient to demonstrate officer lacked reasonable suspicion for a traffic stop);
 
 State v. Johnson
 
 ,
 
 203 N.C. App. 718
 
 , 721-23,
 
 693 S.E.2d 145
 
 , 146-47 (2010) (no review where there was no suppression hearing and there was conflict in the relevant trial testimony such that prejudice review was not possible).